# Carter, Kirtland & Co. v. Happel et al.

### Creditors' Bill to set aside Fraudulent Conveyance.

*Validity of conveyance by insolvent debtor, to family relatives, for valuable consideration, with secret reservation of possession to himself.* — The bill in this case was filed by creditors of an insolvent debtor, to set aside, on the ground of fraud, conveyances of all his property, for a recited valuable consideration, to his family relatives; and the evidence was held to be insufficient to overcome the positive denials of the answers and the testimony of the defendants themselves.

APPEAL from the Chancery Court of Hale.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 15th day of August, 1867, by Carter, Kirtland & Co., and Tracy, Irwin & Co., the appellants, as creditors of Philip Happel, against said Philip Happel, Henry H. Happel, his son, William N. Knight, his son-in-law, and Ephraim Knight, the father of said William N. Knight; and sought to set aside, on the ground of fraud, certain conveyances of real estate, made by said Philip Happel to the other defendants on the 10th day of August, 1866. One of said deeds conveyed to said Ephraim Knight a house and lot in Greensboro, and forty acres of woodland in the vicinity, for the specified consideration of $10,600 in hand paid; $10,000 being the price of the house and lot, and $600 the price of the woodland. The other deed, which was dated the same day, conveyed to said H. H. Happel and William N. Knight, for the specified consideration of $2,500, a storehouse and lot in Greensboro. The bill alleged that said Philip Happel, at the time these deeds were executed, was in failing circumstances, if not insolvent; that the deeds conveyed all his visible property, and were intended to hinder, delay, and defraud his cred-

itors in the collection of their debts; that the grantees were cognizant of his pecuniary condition, and participated in his fraudulent intent; and that no consideration in fact passed between the parties to the deeds. The deeds were without attesting witnesses, and were admitted to probate, on the acknowledgment of the grantor and his wife, in December, 1866.

Service of process was perfected on all the defendants, on the 22d August, 1867. On the 17th October following, separate answers were filed by Philip Happel, Henry H. Happel, and Ephraim Knight. Philip Happel admitted the correctness of the complainants' demands, and his own insolvency at the time the deeds were executed; but denied all the charges of fraud, and asserted that the full amount of the purchase money, as recited in the deeds, was paid to him in good faith at the time. Ephraim Knight and Henry H. Happel each denied all knowledge on his part of the embarrassed condition of Philip Happel at the time of the execution of the deeds, and asserted his payment of the purchase money, in good faith, as recited in the deeds. Philip Happel having remained in possession of the house and lot sold and conveyed to Ephraim Knight, he explained his retention of possession, by asserting, in his answer, that he did so under a verbal agreement between himself and said Knight, contemporaneous with the sale and conveyance, by which he was allowed to retain possession of the house and lot, free of rent, and cut timber from the land, until the end of the year 1866; and that his subsequent possession was held under a contract for the payment of rent; and the answer of said Ephraim Knight contained similar allegations. An answer was also filed by William N. Knight, on the 26th November, 1867, in which he denied all knowledge on his part, at the time of his purchase jointly with Henry H. Happel, of the embarrassed pecuniary condition of said Philip Happel; asserted that his purchase was made in good faith, and the purchase money paid in full; and stated that he was cognizant of the transactions between Philip Happel and Ephraim Knight, and saw the purchase money paid in full ($10,600), in gold; also, that Philip Happel's retention of possession was under and by virtue of said parol agreement between him and Ephraim Knight.

On the 7th day of October, 1867, the property sold and conveyed by Philip Happel to Ephraim Knight, as above described, was sold by the sheriff of Hale County, under an execution against Philip Happel, issued on a judgment against said Philip Happel, in favor of Robertson & Hudson, for $725.95, which was rendered by the Circuit Court of said county at its Spring Term, 1867; and at said sale, William N. Knight became the purchaser, at the price of $150, and received the sheriff's deed for the property. In his original answer, said William N.

[Carter v. Happel.]

Knight did not mention this sale or purchase ; but on the 7th June, 1869, he filed an amended answer, in which he stated these facts, and claimed title to the property under his purchase at said sheriff's sale ; and on the next day, June 8th, 1869, he filed a cross-bill, alleging that the judgment of Robertson & Hudson was a lien on all the property of Philip Happel, which had been conveyed by the deeds above described, superior to the lien which the complainants had acquired by their bill; asserted his own title under the deed from the sheriff to the property conveyed to Ephraim Knight, and prayed that the complainants be not allowed to subject said property to the satisfaction of their demands. Ephraim Knight, Philip Happel, Henry H. Happel, and the complainants in the original bill, were made defendants to the cross-bill, and filed separate answers thereto. The complainants, in their answer, denied that the judgment of Robertson & Hudson was, or could be, a lien on the property which they sought by their bill to subject to the satisfaction of their demands, or that said William N. Knight acquired any interest in said property by his alleged purchase at sheriff's sale ; and they alleged that said Ephraim Knight, after said purchase at sheriff's sale by William N. Knight, in furtherance of the original fraudulent purpose of the defendants, conveyed the said property to Mrs. Mary J. Happel, the wife of said Philip Happel, the consideration recited in the deed being $3,500. The other defendants, in their answers, admitted all the allegations of the cross-bill.

The validity of the complainants' debts, and the insolvency of Philip Happel at the time the conveyances were executed, were admitted. The complainants took the depositions of two witnesses, who testified that the possession and use of the premises reserved to Philip Happel, by the parol agreement between him and Ephraim Knight, was worth from $250 to $300. The depositions of all the defendants were taken on their own behalf, and fully sustained all the allegations of their answers. Ephraim Knight further testified that the money which he paid to Philip Happel, as the price of the said house and lot and land, was saved and hoarded by him during the late war ; and that he used the money, in making said purchase, as a permanent investment. Philip Happel testified that he owed about $20,000 at the time of the execution of the two conveyances attacked for fraud in this case, and knew that he was insolvent, but he had not communicated to the other defendants any information as to his pecuniary condition ; and that of the $10,-600 received from Ephraim Knight, he had advanced about $3,000 to his son, said Henry H. Happel, to enable him to carry on planting operations on a large scale during the year 1867, and had consumed the residue in the payment of his family expenses.

[Carter v. Happel.]

On final hearing, on pleadings and proof, the chancellor dismissed the bill holding that the evidence was not sufficient to overcome the denials of the answer; and his decree is now assigned as error.

JAS. J. GARRETT, W. & J. WEBB, and MORGAN, BRAGG & THORINGTON, for appellants.

COLEMAN & SEAY, contra.

B. F. SAFFOLD, J.— The purpose of the bill, filed by the appellants as creditors, was to have set aside certain conveyances of real estate made by their debtor, Philip Happel, on the ground of fraud. The said Happel, being at the time in failing circumstances, did convey to E. Knight a house and lot in Greensboro, and a tract of land containing forty acres; the first, in alleged consideration of $10,000 paid; and the other, of $600 paid. On the same day he also conveyed a storehouse to Henry H. Happel and William N. Knight, his son and son-in-law, in expressed consideration of $2,500 paid. This was about all of the property he had. The appellants were simple contract creditors without a lien, but their claims were admitted to be correct and unpaid. The answers of the defendants, required to be under oath, denied any fraud outright; and their testimony was directly to the effect that E. Knight had paid for the property sold to him the price mentioned, and admitted to be adequate, in lawful money, derived from gold which he had hoarded during the war; and that the vendees of the storehouse had also paid money, derived from specified means of a legitimate character.

The only facts or circumstances calculated to cast suspicion on the completeness of the testimony on behalf of the defendants were, 1st, that by a verbal agreement, contemporaneous with the sale, the vendor (Happel) was to occupy the house and lot sold to E. Knight, free of rent from the date of the sale, August 10, 1866, to the first of January ensuing, and during the same time to get wood from the tract of land without charge. 2d. A sale of the house and lot to Mrs. Happel, wife of his vendor, by E. Knight, in 1869, for $3,500. 3d. A claim set up in a cross-bill by William N. Knight, that after the original bill was filed, he bought the house and lot in question, at a sale by the sheriff under an execution issued on a judgment rendered in April, 1867, against the grantor, Happel, in favor of Robinson & Hudson, which judgment, he said, was a lien on that property; and the admission of Philip Happel and E. Knight that it was so, though the latter said he did not know of it when he made his purchase. This judgment was ren-

[Price v. Stone.]

dered nearly a year after the sale to E. Knight; and what is said of it by the defendants is claimed by the appellants to have proceeded from a consciousness on their part of the bad faith of their transactions, and a desire to fortify their fraud by another source of title.

The circumstances of fraud above stated are not sufficient to overcome the sworn answers of the defendants, and their positive testimony, in denial of any fraud in fact or intention. They give an account of the suspected transactions which cannot be overcome by merely suspicious circumstances. The deed of Happel for the house and lot was recorded within a reasonable time, and just before the term of his occupancy under the verbal agreement was to expire. This occupancy was no more than a badge of fraud, susceptible of explanation. This explanation is found in the evidence, that the consideration was adequate, and was paid; that the vendee, E. Knight, did not know of the insolvency of his vendor, Happel; the advantage or benefit reserved to the said grantor was inconsiderable and temporary; and the time of year was unfavorable, either for procuring or disposing of a house and lot by rent. *P. & M. Bk. of Mobile* v. *Borland*, 5 Ala. 531; *Ravesies* v. *Alston*, Ib. 297; *Blocker* v. *Burness*, 2 Ala. 354; *Henderson* v. *Mabry*, 13 Ala. 713; *Crawford* v. *Kirksey*, and *Harkins* v. *Bailey*, June Term, 1872.

The sale of the house and lot to Mrs. Happel by E. Knight, in 1869, for a sum greatly less than he had given for it, and the admission by him and Philip Happel that the judgment of Robinson and Hudson was a lien on the property, are slight and inconclusive evidences of fraud. The judgment may have been a lien for aught that appears. Knight had a right to give Mrs. Happel the house if he chose. Because he sold it to her for about one third of what he had given for it, we cannot conclude that he did not pay the amount he swears he did. Philip Happel gives a very reasonable account of what disposition he made of the money received from him.

The cross-bill fails with the dismissal of the original bill.

The decree is affirmed.