# Crawford *et al.* *v.* Kirksey *et al.*

## *Creditors' Bill in Equity.*

1. *Validity of conveyance for indemnity of sureties against nominal liability.—* A mortgage, or deed of trust, executed by an insolvent debtor, to indemnify the sureties on his official bond as executor or administrator against their liability, is without consideration, and fraudulent and void in law as against creditors, if, at the time of its execution, their liability was merely nominal, and, on a subsequent final settlement, he was found not to be indebted to the estate, and was discharged.

2. *Supersedeas bond on appeal; liability of sureties.*—On appeal to this court in a chancery cause, if a *supersedeas* bond is given, and the decree is here affirmed (Rev. Code, § 3500), this court will render a summary judgment against the sureties ; or, if the bond does not conform to the provisions of the statute, an action at law for its breach may be maintained ; but, if the decree is reversed, although a part of it is held to be free from error, and the cause is remanded for further proceedings, the chancellor has no power to render a summary judgment against the sureties on the bond.

3. *Fraudulent conveyances ; constructive and actual fraud defined and distinguished.*—A conveyance by gift, or on consideration not deemed valuable in law, is constructively fraudulent as against the existing creditors of the grantor, without regard to the intent with which it was made, or the amount of property conveyed by it. But, if the consideration is valuable, there must be a secret trust for the benefit of the grantor, or an intent to hinder, delay, or defraud creditors—in other words, actual fraud—to invalidate the conveyance.

4. *Conveyances on valuable consideration, new or antecedent.*—A sale or conveyance upon a new consideration, though valuable, made by a debtor who is insolvent, or in failing circumstances, will be set aside at the instance of his creditors, if the purchaser or grantee knew that the purpose of the debtor was to place his property beyond the reach of his creditors, or had such information as charges him with notice of that purpose ; and if he acquires such knowledge, actual or constructive, before making full payment of the purchase-money, any subsequent payments are in his own wrong. But, a sale in payment of an antecedent debt, at a fair and reasonable price, without any secret trust, or benefit reserved to the debtor, will be upheld, although the debtor was insolvent, and was so known to be by the purchasing creditor, and although the effect of the conveyance, as known by both contracting parties, would be to leave the debtor without property to pay his other debts. (Explaining and limiting *Pulliam, Wills & Rankin v. Newberry's Adm'r*, 41 Ala. 168, as to principle stated in third head-note.)

5. *Retention of possession by vendor.*—The settled rule in this State is, that the retention of possession by the vendor, after an absolute sale, is, at most, only *prima facie* evidence of fraud, and may be rebutted or explained; and proof of a *bona fide* contract of lease, or hiring, will, as a general rule, repel the presumption of fraud.

6. *Undue publicity and particularity as badges of fraud.*—Circumstances of undue publicity and particularity on the one hand, and secrecy on the other, are sometimes regarded as *indicia* of fraud; but, in this case, the relationship of the contracting parties, being brothers-in-law, and the known embarrassed condition of the debtor, sufficiently explain the fact that, when the contract was made, two neighbors were called in to appraise the property, and to witness the execution of the receipt and conveyance.

7. *General assignment for benefit of creditors.*—An absolute deed, executed by

[Crawford et al. v. Kirksey et al.]

an insolvent debtor to his largest creditor, in satisfaction of an antecedent debt ; and a mortgage executed on the next day, conveying the greater part of the residue of his property to said creditor and another person, to secure them against a supposed liability as his sureties on an official bond, cannot be construed together as constituting a general assignment (Rev. Code, § 1867), when the deed is upheld as a valid conveyance, although the mortgage is held to be without consideration, and therefore constructively fraudulent and void as against creditors, because the supposed liability proved to be merely nominal.

8. *Liability of mortgagee, as trustee for creditors, when mortgage is held constructively fraudulent.*—When a mortgage is held constructively fraudulent as against creditors, because not supported by a consideration deemed valuable in law, the mortgagee is liable to the creditors as a trustee, for the mortgaged property or its proceeds, from the time when service of the bill is perfected on him, and any subsequent payments made by him are in his own wrong ; but, when his liability to creditors is first asserted in an amended bill, the amendment will not be allowed to relate back to the filing of the original bill, so as to hold him liable for moneys paid out by him in the meantime in good faith.

Appeal from the Chancery Court of Greene.

Heard before the Hon. A. W. Dillard.

This case was before this court at its June term, 1872, when the decree of the chancellor was reversed, and the cause remanded, as shown by the report of the case, 50 Ala. 590–99. The opinion contains a full statement of all the material facts. The arguments of counsel were very elaborate, and have been greatly condensed, presenting only a brief statement of the points and authorities, as the statute now requires.

W. P. Webb, Wm. G. Jones, and Morgan & Jolly, for appellants.—1. There is manifest error in that part of the chancellor's decree which holds the sureties on the first appeal bond liable for the money and property covered by the mortgage from Creswell to Crawford, and directs execution to issue against them. If the decree had been affirmed on the former appeal, this court might (and doubtless would) have rendered a judgment against the appellant's sureties.— Rev. Code, § 3489. But the appeal was prosecuted to effect, and the chancellor's decree was reversed; and the condition of the bond was thus discharged. The chancellor had no jurisdiction whatever over the sureties.

2. Crawford could not be held liable, in this proceeding, for the money ($5,128.80) which he paid over to Creswell on the 12th March, 1868. This money was held by him under the mortgage, and he had no right to retain it after the settlement made on the 18th February, 1868, which showed that the sureties were in fact under no liability on the bonds. The original bill did not assail the mortgage as fraudulent, and the amended bill, which first brought forward the charge of fraud against it, was not filed until the lapse of several months after the payment had been made. Until the

[Crawford et al. v. Kirksey et al.]

amended bill was filed, the money or property in the hands of Crawford as mortgagee was not affected by the pending litigation; and the amendment will not be allowed to relate back, so as to hold him liable for moneys which he had already paid over in good faith.

3. This court decided, on the former appeal, on the pleadings alone, that the conveyance from Creswell to Crawford was not fraudulent and void as against creditors. The testimony since taken, as contained in the present record, strengthens that conclusion, and brings the case within the principles settled by numerous authorities. A debtor, in failing circumstances, may sell and convey his property, at an adequate price, to a *bona fide* creditor, even though the known effect of such sale and conveyance may be to delay or defeat his other creditors.—*Young v. Dumas*, 39 Ala. 60; *Carter v. Happel*, 49 Ala. 539; *Ruhl v. Phillips*, 8 Amer. 522, or 48 N. Y. 125; *Jaeger v. Kelly*, 52 N. Y. 274; Bump on Fraud. Conveyances, 234–5, and authorities there cited. The *bona fides* of the debt in this case is fully established, and the value of the property conveyed was fixed by appraisers called in for that purpose; nor is the fairness of that valuation assailed. The subsequent possession of the property by Creswell is fully explained by the contract of renting, and no conclusion or presumption of fraud can be drawn from the mere relationship of the parties.—*Montgomery v. Kirksey*, 26 Ala. 172; *Millard v. Hall*, 24 Ala. 209; *Young v. Dumas*, 39 Ala. 60. Courts will not strive to force conclusions of fraud, and will not impute fraud when the facts may consist with pure intentions.—*Steele v. Kinkle*, 3 Ala. 358; *Ala. Life Ins. & Trust Co. v. Pettway*, 24 Ala. 544. All the facts which the chancellor regarded as *indicia* of fraud, are explained, and shown to be consistent with the utmost good faith. That two neighbors were called in to appraise the property, and to witness the consummation of the contract, instead of showing undue publicity and particularity, which the chancellor thought indicative of fraud, only brings the parties within the recommendation of the judges in *Twyne's case*, 3 Co. Rep. 81. If this had not been done thus publicly, secrecy would have been urged, with equal reason, as a badge of fraud.

4. The Gordon land was bought by Crawford, at sheriff's sale, in February, 1870; but the judgment against Creswell, on which the execution issued, was rendered in 1867; and its lien was older than the equitable lien of the complainants, whether acquired by the original or the amended bill.—Rev. Code, § 2877. The contest is not between judgment creditors, as in *Dargan v. Waring*, 11 Ala. 995; but is between a purchaser at sheriff's sale, under a judgment and statutory

[Crawford et al. v. Kirksey et al.]

lien, and a creditor by simple contract, claiming an equitable lien under the doctrine of *lis pendens*. In such cases, equity always follows the law.

W. COLEMAN, with whom was R. H. SMITH, *contra.*—1. Crawford only appeals, and he can not be heard to complain of the decree against the sureties on his former appeal bond, since he is not injured by it.—*Walker v. Jones,* 23 Ala. 448; 1 Brick. Dig. 780, § 96.

2. Crawford can not, as against these complainants, hold the mortgaged lands under his purchase at sheriff's sale. Their lien dates back to the filing of their bill, February 14, 1868, and overrides his title by purchase at that sale.—*Dargan v. Waring,* 11 Ala. 988. A vendee, claiming under a fraudulent deed, acquires no title by a purchase at execution sale. *Faulk v. McFarlane,* 1 W. & S. 297; Kerr on Fraud, 198, note.

3. The validity of the mortgage was settled by the former decision, and it is not now questioned. It follows, of course, that Crawford is liable to account for the proceeds of the cotton conveyed by the mortgage; and he is equally liable to account for the money received from Mrs. Jolly on the sale of the house and lot, although he paid it over on the order of Creswell, in March, 1868, under the advice of counsel, as he alleges. This money was held by him under a verbal agreement, made simultaneously with the mortgage, and subject to the same trusts and conditions, though the property was not included in the mortgage. It was a secret trust, which was a fraud on Creswell's creditors; and their rights attached to the money, as a part of the trust fund in the hands of Crawford, from the time process was served on him under the original bill, although they then had no knowledge of its existence.

4. The deed from Creswell to Crawford is fraudulent and void, in law and in fact, as against the complainants. Fraud is an inference of law from the facts. It devolved on the complainants, in the first instance, to prove the fraudulent intent from the facts and surrounding circumstances, to the satisfaction of the chancellor, who was sitting as a trier of the law and facts. But, badges of fraud being shown, such as the retention of possession by the grantor after an absolute sale, the *onus* was shifted on the defendants, to prove the fairness of the transaction, and that it was upon adequate valuable consideration.—1 Smith's Leading Cases, 48; *P. & M. Bank v. Borland,* 5 Ala. 531; *Borland v. Mayo,* 8 Ala. 115; *Ayres v. Moore,* 2 Stew. 336; *Darwin v. Handley,* 3 Yerger, 502; *Sumerville & Crutcher v. Horton,* 4 Yerger, 541; *Maney*

[Crawford et al. v. Kirksey ⌣ , al.]

*v. Killough*, 7 Yerger, 445. It is not sufficient that the deed be upon good consideration, or *bona fide:* it must be both.— Kerr on Fraud, 199–200. Many of the articles of personal property conveyed by the deed were perishable, and were consumed by the grantor, with whom they were left; and this was not only a badge of fraud, but, if intended, was the reservation of a secret trust for the benefit of the grantor, which renders the deed void as to creditors.—*Ticknor & Day v. Wiswall*, 9 Ala. 308 ; 5 Ala. 297–302; 4 Yerger, 541. The admitted insolvency of Creswell; his near relationship to Crawford ; the pendency of suits against him, and the threatened institution of more ; the fact that the court was on the eve of being held, and the further fact that the deed was not recorded until the first day of court—all are strong indications and badges of fraud.—*Dent v. Portwood*, 21 Ala. 588 ; *Jones v. Stewart*, 19 Ala. 701 ; *Montgomery v. Kirksey*, 26 Ala. 172 ; *Smith v. Henry*, 2 Bailey, 123 ; *Hudnal v. Wilder*, 4 McCord, 294; 11 Sm. & Mar. 469. Making a deed to secure a debt which does not exist, and which the parties must know has no existence, is one of the strongest evidences of fraud.— 8 Yerger, 134 ; *Life Ins. & Trust Co. v. Pettway*, 24 Ala. 544. If one sale is fraudulent, this is evidence of fraud against another, which took place at or about the same time.—17 Penn. St. (5 Har.) 143 ; 24 Vermont, 525. It is evidence of fraud, that the deed conveys all the grantor's property, not excepting the exemptions allowed by law for his wife and children, nor even the necessaries of life.—*Twyne's case*, 3 Co. Rep. 81 ; 1 Smith's Leading Cases, 33. The transaction was hard and unconscionable on its face, and not such as would have been exacted or acceded to, circumstanced as these parties were ; and this shows that it must have been accompanied with a secret trust, and accounts for their subsequent conduct under it. It is permissible to look to the use made of a deed, to show the intent with which it was executed.— *Constantine v. Twelves*, 29 Ala. 607. The deed and mortgage were prepared secretly, and were carefully concealed from the creditors of Creswell, until they were ready for consummation ; and then witnesses were called in, and undue publicity given to the execution of the papers. So many badges of fraud are seldom found in one case. The case of *Pulliam, Wills & Rankin v. Newberry's Adm'r*, 41 Ala. 168, is a conclusive authority against the validity of the deed.

5. The deed and mortgage together constitute a general assignment, which will be held to enure to the equal benefit of all the grantor's creditors. They were prepared as parts of one general plan, and were designed to place the whole of Creswell's property beyond the reach of his creditors ; and

he was known to be insolvent. The statute was intended to prevent an insolvent debtor, when compelled to part with all his property, from making preferences among his creditors; and the form of the conveyance is a matter of no importance. The court will look at the substance and effect of the transaction, and will not allow a wholesome law to be evaded by any arrangement of programme.—*Longmire v. Goode & Ulrick*, 38 Ala. 577; *Holt v. Bancroft*, 30 Ala. 193; *Berry v. Cutts*, 42 Maine, 446; *Johnson v. Whitwell*, 7 Pick. 71; 8 Rob. La. 262; Burrill on Assignments, 2d ed., 94–99.

6. This court will not disturb the decision of the chancellor on a question of fact, unless it is manifestly wrong, and against a decided preponderence of the evidence.—*Phillips v. Phillips*, 39 Ala. 63; *Gordon v. Jones*, 42 Ala. 147; *Ex parte Buckley*, 53 Ala. 46.

STONE, J.—The original bill in this cause, filed February 14, 1868, made three defendants; Samuel L. Creswell, James Crawford, and William P. Webb. Summons was served on them severally, on the 15th and 17th of the same month. It was filed as a creditors' bill, by creditors at large, under section 3886 of the Code of 1876, and seeks to set aside as fraudulent an absolute deed of a large amount of property, made by Creswell to Crawford, October 4, 1866. It also prayed that, in the event said deed should not be declared fraudulent, it, and a mortgage deed executed by Creswell to Crawford and Webb, on 5th October, 1866, should together be declared a general assignment, under section 2126 of the Code of 1876, and the property administered for "the benefit of all the creditors of the grantor equally." The original bill made no attack on the mortgage deed to Crawford and Webb, save the averment that it and the absolute deed to Crawford constituted a general assignment under the Code of Alabama, section 2126, *supra*.

An amended bill was filed November 28, 1868, in which it was charged that the mortgage deed to Crawford and Webb, of October 5th, 1866, was made with intent to delay, hinder, and defraud the creditors of Creswell. Sworn answers were required from defendants, to both the original and amended bills. It does not appear whether summons on the amended bill was issued or served; but sworn answers, as required, to both the original and first amended bills, were filed by each of the defendants, in June, 1869. The first amended bill also charged, that twenty-five hundred dollars in money, proceeds of a house and lot sold by Creswell to Mrs. Jolly, about the time of the execution of the deed and mortgage to Crawford and Webb, were placed in the hands of Crawford

and Webb, or one of them, as additional security to them against the liability the mortgage was designed to protect them against; and it charged that this also was fraudulent, and sought to condemn it in their hands, for the payment of Creswell's debts. A second amended bill was subsequently filed, but it need not be noticed here.

The absolute deed to Crawford was made in payment of a debt alleged to be due from Creswell to Crawford, of a sum of money which exceeded, by several thousand dollars, the value of the entire property conveyed. A valuation was placed upon the property, and this debt was cancelled and surrendered in payment for it.

The alleged consideration of the mortgage was as follows: Creswell was executor of his father's will, and administrator of his mother's estate. The aggregate sum of the two bonds was large, and Crawford and Webb were his sureties. Neither estate had been settled, and it was not known how the accounts would stand on settlement. The mortgage and security were given at the earnest entreaty and demand of Webb to be made safe. The twenty-five hundred dollars from Mrs. Jolly, pledged on same account, was placed in the hands of Crawford for safe custody.

In February, 1868, a settlement was had of the two estates of which Creswell was the personal representative. It appears that, before the war, the funds of the two estates were placed in the hands of Crawford, with the consent of the beneficiaries, as he alleges, that he might realize interest thereon; that he did put the money to interest, and continued to collect and re-invest it, until, during the war, it became converted into Confederate securities, and was lost. Crawford denied his liability to account for it; but, in February, 1868, he consented to account for it, on a basis that relieved him from some interest; his offer was accepted, the settlement made, and the money paid; and no liability was, in fact, fixed on Creswell, Crawford, or Webb, in virtue of said administration bonds. The mortgage and said pledge of twenty-five hundred dollars from Mrs. Jolly were thus left without any valuable consideration to support them.

The answers of Crawford and Creswell state, that the alleged debt from the latter to the former was bona fide, and subsisting; that the sale was absolute, and free from any trust, or intent to delay, hinder, or defraud creditors; and, it may be stated in general, that the answers deny or explain every averment, tending to give equity to the bill, on the ground of alleged fraud, except these two circumstances: the relationship between Creswell and Crawford, being brothers-in-law, and the known inability of Creswell to pay

[Crawford et al. v. Kirksey et al.]

all his debts. These averments they admit. The bill charges that Creswell, after the alleged sale, continued to possess and occupy the property; the answers state that this was under an annual contract of lease, at a fair, stipulated rent, which was also *bona fide*.

The answer of Webb sets up that, at the time he took the mortgage, he did not know how Creswell stood in his accounts as executor and administrator—thought he was liable for a considerable balance—and denies all intent to delay, hinder, or defraud Creswell's creditors; admits that he knew Creswell was insolvent when he made the mortgage, and that many suits were pending against him, which would probably soon go into judgment; says that Creswell's settlements have shown that there is no liability on account of said bonds; and he disclaims all interest in, and claim to said mortgaged property; says he has never had any of it in his possession.

This cause was first submitted to the chancellor, on bill, answers, and exhibits, and an agreement of counsel, which exerts no influence on the *bona fides* of the absolute deed to Crawford. The chancellor decreed both the deed and mortgage to be fraudulent. The case was brought by appeal to this court, and is reported as *Crawford v. Kirksey*, 50 Ala. 590. In this court it was held, that the absolute deed to Crawford was free from fraud, and a valid conveyance. This court said, "The case, then, stands upon these isolated admissions of insolvency, relationship, and the pendency of suits. It has been shown that these circumstances alone would not be sufficient, without more, to vitiate the deed. The retention of the possession, after the sale, is explained in the answers, and shown to be the possession of a bailee and lessee. Such possession, when so explained, is not inconsistent with good faith. The other circumstances relied upon to establish fraud, such as unusual particularity, and the delay to record the deed until after the court was in session, though calculated to excite suspicion, are of very little force."

In reference to the mortgage to Crawford and Webb, this court said, "From Webb's answer it appears, that the liabilities mentioned in this conveyance were merely nominal, and that upon a final settlement of the estates therein named, the said Creswell was discharged from liability for further accounting. This discharged the sureties of his bonds. This seems to have been the condition of these estates when this deed was executed. There was, then, really no sufficient consideration to support it. Such a conveyance must not only be made in good faith, but upon a consideration deemed valuable in law. The decree of the court below, setting aside this deed, was free from error. * * * The decree

(20)

of the court below is reversed, and the cause is remanded, for further proceedings in the court below in conformity with the law as indicated in this opinion." This court ruled, also, that the deed and mortgage did not, together, constitute a general assignment.

In stating that " this seems to have been the condition of these estates when this deed was executed," our predecessors were led into a slight error, by a want of fulness in the answers. As we understand the record—shown more fully, however, by the testimony, which was not before the chancellor, or this court, on the first hearing—there was, at the time of the making of the mortgage, a considerable balance against Creswell, which Crawford liquidated in February, 1868, by making good the fund which he said had perished in his hands during the war. This, however, is a matter of small moment, as it only tends to confirm—what our predecessors in fact decided—not that the mortgage was made with intent to delay, hinder, and defraud creditors, but that it was, and is, constructively fraudulent, in this, that it was made on no actual valuable consideration, by one who was indebted at the time. In making this statement, we are simply fortifying the ground on which our predecessors based their opinion, without intending, at this time, to speak of what are alleged to be badges of fraud attending the execution of the mortgage.

Another statement in the opinion of our predecessors seems to have been made on a misconception of the pleadings. The statement is this: "The denials in the answers of Creswell and Crawford that Creswell is liable for his *pro rata* share of the amounts thus paid, and that the complainants are not creditors of Creswell, are mere evasions. Such testimony was properly disregarded by the chancellor. These denials must have been made upon a misconception, both of the facts of the case, and of the law." Creswell's denial, after admitting the co-suretyship, and the several sums paid by complainants, as alleged, is in the following language : "But denies, as he is advised, informed, and believes, that the said complainants are creditors of this defendant, to the extent alleged in said bill." Crawford's is in the following language : "But denies, as he is advised, informed and believes, that said complainants are creditors of said S. L. Creswell, to the extent alleged in said bill." In connection with these denials, each of said defendants states, on information and belief, that of the sums alleged in the bill to have been paid by complainants severally on account of their said co-suretyship, Kirksey has been re-imbursed by another co-surety $3,400, and Coleman $1,400. If this be

[Crawford et al. v. Kirksey et al.]

true, Creswell was not indebted to the complainants "to the extent alleged in said bill."

When this cause was remanded to the Chancery Court, each party took a considerable volume of testimony, and the cause was again submitted to the chancellor for decree, on pleadings and proofs. In a most elaborate opinion, the chancellor again declared the deed of October 4th, 1866, fraudulent and void. In his opinion, we regret to note that the chancellor allowed himself to be drawn into the utterance of expressions, which scarcely fall within the pale of legal terminology. The vehemence of fervid composition, we suppose, led him astray.

The chancellor ruled, that this court had reversed his former decree only in part, and had affirmed it, in so far as it had pronounced the mortgage to Crawford and Webb fraudulent. He thereupon ordered that Crawford, who had received the fund originally, should pay it into court, with interest, by a given day; and in default thereof, that execution should issue for its collection, against him and his sureties on his *supersedeas* bond, given in the former appeal to this court.

We have not before us the *supersedeas* bond given in that case, and hence can not affirm what its conditions are. It must have been given under one or the other of sections 3927 or 3928 of the Code of Alabama of 1876. Such bonds usually contain the condition, "to prosecute the appeal to effect, and to satisfy such judgment as the Supreme Court may render in the premises." We have, above, shown the language of this court, in the opinion reversing the decree of the chancellor. In the certificate of reversal, sent from this court to the court below, the clerk of this court certified, that it was "considered by our Supreme Court, on the 20th day of June, 1872, that said judgment of said Chancery Court be reversed and annulled," * * and that said appellees, Kirksey and Coleman, pay the costs accruing on said appeal in said Supreme Court, and in the court below." These certificates usually employ the substance, if not the very language in which the judgment of this court is rendered; and we suppose the clerk did so in this instance.

[2.] There is nothing in the judgment, or action of this court, which justified that part of the chancellor's decree, noted above. The decree of the chancellor was in no sense affirmed. If it had been, this court would have proceeded to render such judgment against the sureties as the law authorizes, and would have adjudged costs against the appellant. This court alone has authority to render summary judgments against sureties on appeal or *supersedeas* bonds,

[Crawford et al. v. Kirksey et al.]

returnable to this court.—Code of Alabama, § 3941. When the *supersedeas* bond does not fall under the influence of sections 3941-2, the remedy for its breach is a suit at law on the bond. This part of the decree of the chancellor must be reversed.—See *Hughes v. Hatchett*, at the present term.

[3.] We propose, in the next place, to consider that feature of this case, which charges that the absolute deed from Creswell to Crawford was made with intent to delay, hinder and defraud the creditors of Creswell. The pleadings are exceedingly well drawn. After charging the relationship of the parties, the insolvency of Creswell, that many suits were pending against him, and court about to sit at which judgments would be rendered against him, and denying that there was any valuable consideration for the deed, the bill proceeds as follows : ''If the consideration recited in said deed was really paid, or if the said Creswell was really indebted to said Crawford, to the amount recited as the consideration, said deed was made upon a secret trust, agreed upon between them, that said Creswell should redeem or re-purchase the property conveyed, on some terms or other, or should remain in possession and use of said property on some terms or other, for his own benefit; or upon some other secret trust, known to them, but unknown to your orators.''

Fraud vitiates all transactions, even the most solemn. The fraud which will avoid sales and conveyances, as being made to the prejudice of creditors, is either constructive or actual. Constructive fraud is when one, who is indebted, disposes of his property to another by gift, or on consideration not deemed valuable in law. Under our decisions, such disposition is constructively fraudulent, as against the existing debts of the grantor, no matter how innocent or meritorious the motive with which it is made, or how inconsiderable a part of the grantor's property is thus disposed of. Debtors must be just before they are generous, has been the lifetime language of this court.—2 Brick. Dig. 14, § 10 ; Ib. 16, § 45 ; Ib. 17, §§ 57, 58, 59 ; Ib. 21, §§ 100 *et seq.* ; *Spencer v. Godwin*, 30 Ala. 355 ; *Miller v. Thompson*, 3 Por. 196. But, when property is purchased from the debtor, and a valuable consideration paid for it, a different rule prevails. The question of intent then becomes a material inquiry. If there be no fraudulent design, or secret trust, such sales are upheld. But, if there be a secret trust, or the sale or conveyance be made with intent to delay, hinder, or defraud creditors, either of these will set the conveyance aside, if assailed by a creditor, notwithstanding there may be a full consideration paid for the property. This is what the law calls actual fraud.—Code of Alabama, 1876, §§ 2120, 2124, 2125 ; *Cum-*

[Crawford et al. v. Kirksey et al.]

*mings v. McCullough*, 5 Ala. 324; *Carter v. Castleberry*, Ib. 277; *Patterson v. Campbell*, 9 Ala. 933; *Elliott v. Horn*, 10 Ala. 348; *McGuire v. Miller*, 15 Ala. 394; *Wiley, Banks & Co. v. Knight*, 27 Ala. 336; *Reynolds v. Welch*, 47 Ala. 200; 1 Brick. Dig. 132, § 123.

[3.] Another distinction has grown up; namely, between sales and conveyances made in payment of an antecedent debt, and those made on a new consideration, paid or promised. Each of these classes of conveyance has privileges and rights, not enjoyed by the other. *First*, as to sales upon a new consideration, and not in payment or security of an antecedent debt: If the seller be insolvent, or in failing circumstances, and the purchaser knows, or is in possession of information reasonably calculated to stimulate inquiry, and which, if followed up, would lead to the discovery that the purpose of the seller is to put his property beyond reach, or otherwise to delay, hinder or defraud his creditors; then, a purchase under these circumstances, though full consideration is paid, is invalid as against creditors. But, if the purchase be made without such knowledge, and without such information as reasonably to put him on inquiry, he acquires a good title, no matter how fraudulent the intent of the seller. There is this qualification, however. If the purchaser, before full payment, is chargeable with knowledge of the fraudulent intent of the seller, he is not permitted to make further payments to the seller, but must withhold the same for the paramount claims of his creditors.—*Hall v. Heydon*, 41 Ala. 242; 2 Brick. Dig. 18, §§ 70, 71; *Tatum v. Hunter*, 14 Ala. 557; *Cummings v. McCullough*, 5 Ala. 324; *Green v. Tanner*, 8 Metc. Mass. 411.

*Second*, When the sale is in payment of an antecedent debt. Our statutes have not gone the length of declaring that an insolvent debtor, or one in failing circumstances, shall not give a preference in the payment of his debts. If there be no secret trust, or benefit or reservation, reserved to the grantor, an actual sale made by such debtor, at a fair and reasonable price, will be upheld, although it be known to both contracting parties that such sale will leave the debtor unable to pay his other debts. This is one of the inevitable consequences of allowing a failing debtor to give preferences. The fraud which vitiates a sale by an insolvent debtor to a preferred creditor, is unlike that of a sale for a new consideration paid. It is an attack upon the sale itself, as an actual transfer of the property and its title, or upon the sufficiency or *bona fides* of the consideration. Simulation, secret trust—these are the defects which usually avoid sales made, or pretended to be made, by a debtor in failing circumstances,

[Crawford et al. v. Kirksey et al.]

to a preferred creditor. Such was the taint in the contract which was declared void in *Twyne's case.* We do not, however, intend to deny that simulation and secret trust sometimes accompany sales made ostensibly for a present new consideration. All we mean to affirm is, that when an insolvent debtor goes through the form of a sale to a preferred creditor, but really intends thereby to defraud his creditors, simulation is usually resorted to, to cover up the secret trust by which he proposes to secure a benefit to himself. If there be a real debt, and real transfer of the title and use of property in its payment, at a fair price, and in good faith, pressing importunity on the part of the creditor to procure its execution will not avoid the deed, although the debtor be known to be insolvent, and the known effect of the conveyance is to leave the debtor without property to pay his other debts, To hold otherwise, would be to declare that the vigilant creditor, who stipulates for security of his claim against a failing debtor, loses his claim by atttempting to save it. We wish not to be misunderstood. The creditor must not go beyond the permissible purpose of securing his own demand. If he go beyond this, and secure a benefit to the debtor, he will thereby violate both the letter and spirit of the statute, and his conveyance will be set aside for the fraud.—Code of Alabama, §§ 2120, 2125; *Robinson v. Ripley,* 2 Stew. 86; *Stover v. Harrington,* 7 Ala. 142; *Montgomery v. Kirksey,* 26 Ala. 172; *Johnson v. Thweatt,* 18 Ala. 741; *King v. Kenan,* 38 Ala. 63.

In *Holbird v. Anderson,* 5 T. R. 235, the case was this : " In Easter term, 1791, Shepherd obtained a judgment against Charter, who brought a writ of error, and delayed execution until Easter term, 1792, when the judgment was affirmed in the Exchequer Chamber. On the 7th May, the costs in that suit were taxed; and on the same day, Charter wrote a letter to Shepherd, requesting further time, which was refused. On the 8th May, Charter, knowing Shepherd's intention to take out execution, which he was entitled to sue out that day, went to the plaintiff, Holbird, who was a creditor of his, informed him of his situation, and executed a warrant of attorney to confess judgment, on which judgment was immediately entered up, and execution sued out, and delivered to the sheriff two hours before Shepherd's execution reached the sheriff's office." The question was, whether Shepherd's or Holbird's execution had the prior claim; and it arose on a suit by Holbird against the sheriff. It was contended for Shepherd, that this was an undue preference given by Charter to Holbird, for the purpose of defeating Shepherd's execution, and that the warrant of attorney given to Holbird

was fraudulent and void by the statute 13 Eliz. ch. 5. It is known that the statute 13 Eliz., on the question we are considering, is, in substance, the same as our statute against fraudulent conveyances. *Twyne's case* arose under that statute, and was decided soon after its enactment.

The case went before the court of King's Bench, and the leading opinion was delivered by Lord KENYON. He said : " There was no fraud in this case. The plaintiff was preferred by his debtor, Charter, not with a view of any benefit to the latter, but merely to secure the payment of a just debt to the former, in which I see no illegality or injustice. The words of the statute, 13 Eliz., do not apply to this case ; for this warrant of attorney was given on a good *(valuable?)* consideration ; and the other words in the act, '*bona fide*,' only apply to those cases where possession is not delivered, or where it is merely colorable." ASHHURST and BULLER, JJ., concurred.

In Burrill on Assignments, 3d ed. § 13, it is said : " The right to prefer one creditor over another in these conveyances, by priority of payment, which amounted in many cases to the absolute exclusion of non-preferred creditors, was universally recognized." He was speaking of assignments of property in trust.

The case of *Cavanhovan v. Hart*, 21 Penn. St. 495, presented the identical question we are considering, and draws, in bold lines, the distinction we have attempted to draw. The court below had charged the jury, "that though the debt was believed by the jury to be honestly due, and a fair price for the land ; yet the defendant's deed was void, if he was not moved to the purchase by honest and upright motives—that if John knew of William's indebtedness to other persons, and took the property to place it beyond their reach—to hinder, delay and defraud them—it would taint the purchase with fraud ; and this, whether the claim for which he took it was true or false." In this case, the sale was made to a brother. The case was carried to the Supreme Court, and the opinion there delivered by the distinguished Chief Justice BLACK, in his terse and emphatic style. His language is as follows :

" If a debtor, with the purpose to cheat his creditors, converts his land into money, because money is more easily shuffled out of sight than land, he, of course, commits a gross fraud. If his object in making the sale is known to the purchaser, and he, nevertheless, aids and assists in executing it, his title is worthless as against creditors, though he may have paid a full price. But the rule is different, when property is taken for a debt. One creditor of a failing debtor is not bound to take care of another. It can not be said that

[Crawford et al. v. Kirksey et al.]

one is defrauded by the payment of another. In such cases, if the assets are not large enough to pay all, somebody must suffer. It is a race in which it is impossible for every one to be foremost. He who has the advantage, whether he gets it by the preference of the debtor or by his own superior vigilance, or by both causes combined, is entitled to what he wins, provided he takes no more than his honest due. To pay a creditor his just debt in land at a fair valuation, is no more a fraud upon other creditors, than to pay him in banknotes or silver dollars. Neither is it any worse, or more fraudulent, for a creditor to secure himself by taking a conveyance, than it would be to enter up a judgment. He gets no greater advantage by the former means than by the latter. The notion of the defendants in error seems to be, that the creditor of an insolvent man can not avoid the imputation of fraud, in any way except by cheating himself. But they themselves did not act upon that principle. They struggled to get a lien upon the very property in dispute; and if they had succeeded, would have done to the plaintiff the same injury (if it be an injury) which he did to them by taking the conveyance. * * * A creditor is not acting wrongly, . when he receives payment, or takes security for his debt, though he knows that other persons, who have the same rights with himself, may be less vigilant, or less fortunate. The act being right, no secret feeling can change its character."—*Estwick v. Cailland*, 5 T. R. 420.

In the case of *Pearson v. Rockhill*, 4 B. Monroe, 296, the court said: "The right of a debtor to prefer some of his creditors, even by subjecting his whole property to their debts, without providing at all for others, if he do it in good faith, and not with a fraudulent view unjustly to hinder other creditors, and if the property thus conveyed is not disproportioned to the debts preferred, is undoubted. * * * They [the preferred creditors] had a right to take the stock of goods at fair prices, for these purposes; and they had a right to secure themselves to the full extent of their danger, out of the assets of Pearson & Anderson, though there were actions pending against them when they made the deed of trust for that purpose. No lien had been created, and the imminency from the danger to be apprehended from the creditors, who being about to obtain judgments, on which the executions must be returned *nulla bona*, would, by attachment bills, tie . up the debts due to Pearson & Anderson, and prevent, to an indefinite amount, the application of those which were most, if not alone available to meet the liabilities of their securities, was itself a justifiable and pressing motive for their seeking, and for their principal's desiring, such an arrangement as

[Crawford et al. v. Kirksey et al.]

would secure those debts for which they were liable."

In *U. S. Bank v. Huth, Ib.* 423, the same doctrine is asserted, and very many authorities, English and American, cited in support of it.

The case of *Marshall v. Hutchison,* 5 B. Monroe, 298, was as follows: Hutchison, being insolvent, was indebted to Tucker, to Morris, and to one Robinson, in sums which, in the aggregate, exceeded the value of Hutchison's lands. Tucker was surety for the debt to Robinson. Huchison, Tucker and Morris were brothers-in-law. Mrs. Hutchison had an inchoate right of dower in the lands. Huchison sold these lands to Tucker, in payment of these three debts—something over $9,000—and to induce Mrs. Hutchison to unite in the conveyance that was made, he promised to pay her three thousand dollars; two thousand dollars for her dower, and one thousand dollars as a gift. This was entirely in excess of the full value of the lands. Tucker assumed the debts to Morris and Robinson. Other creditors of Hutchison assailed the *bona fides* of the deed, by a bill in chancery, which charged that it was made with intent to delay, hinder and defraud the creditors of Hutchison. The court said: "It is true, the amount stipulated to be paid Mrs. H. for her dower, as well as the promised thousand dollars, may have had an influence upon Hutchison in inducing him to sell Tucker the land. But of this influence we think the creditors of Hutchison have no just cause of complaint. The doctrine is well settled, that an insolvent debtor, in the disposition of his property, has a right to discriminate among his creditors—to provide for part, to the entire exclusion of the residue. Tucker was paying largely more for the land, with a perfect title, than it was worth, besides the amount he paid for dower. But, independently of this, Mrs. Hutchison's right of dower was an incumbrance upon the title, which she alone could remove." Speaking of the charge made, that Tucker agreed to pay more than its value for the dower interest, the court said: "But, even if it be conceded that it did not exceed the real value, still, as a much larger amount besides was paid the husband than the land was worth, creditors would have no right to complain."

The case of *McMenomy v. Murray,* 3 Johns. Ch. 435, was the case of a preference by an insolvent debtor, given to one of his creditors. The object of the bill was to set aside, as fraudulent, a deed and confessed judgment in favor of the preferred creditor. Chancellor *Kent* said: "Upon what grounds can it be contended that these securities were fraudulent, within the statute of frauds? They were not made for the purpose of defeating executions, but to secure the de-

fendant; and M. felt himself under the most pressing obligations to give Roosevelt a preference.  It is not now to be denied, as I have frequently had occasion to say, and generally with regret, that a debtor in failing circumstances, and even avowedly insolvent, may give such preference; and the only question is, was this a *bona fide*, or only a covinous preference for fraudulent purposes?"

In *Borland v. Mayo*, 8 Ala. 104, the Circuit Court charged the jury that, " although the claimant may not have intended any fraud, or contemplated a dishonest or fraudulent purpose; yet, if the object, or tendency of his purchase, was to place the property beyond the reach of Walker's creditors, and thus hinder and delay them, then the transaction between claimant and defendant in execution was void by construction of law."  It will be observed that this charge ignores altogether the question of intent, and causes the conveyance to fall, if the effect was to place the property beyond the reach of the grantor's creditors.  Transfers of property change its ownership, and thereby change its liability for debts; and, hence, it may be said that the object and tendency of such conveyances is, to place the property beyond the reach of the creditors of the grantor.  The ruling of the court, in giving this charge, was reversed.  Chief-Justice COLLIER, in commenting on it, said : " Every man may sell his property in good faith, if neither creditor nor other person has a lien which is opposed to such right : and this, although the consequence may be to defeat creditors in the collection of their demands."  See, also, *Richards v. Hazzard*, 1 Stew. & Por. 139, which asserts the same principle.

Commenting on a transaction in which a failing debtor had secured one creditor, a near relation, leaving his other debts unpaid, we, in *Young v. Dumas*, 39 Ala. 60, after ascertaining that the debt was *bona fide* and subsisting, said : " The effect may have been to delay, and possibly to defeat all other creditors, in the collection of their demands, [but this] can not, of itself, avoid the sale."  See, also, *Tillon v. Britton*, 4 Halst. 121, 135.

We are referred by appellee's counsel to *Pulliam v. Newberry*, 41 Ala. 168, in which our predecessors ruled, that the Circuit Court erred in not giving a charge asked, in the following language : " If the defendants in attachment were indebted to claimant, and the purchase and sale between the parties was intended by all of them to hinder, or delay, or defraud other creditors, *by securing the debt of the claimant as a preferred creditor*, then the transaction is fraudulent and void."  The italics are our own.  In commenting on this charge, Chief-Justice WALKER seems to have attached no

[Crawford et al. v, Kirksey et al.]

importance to the clause we have italicized.  His language is :
·" The charge asked should have been given.  . It was certainly
neither abstract, nor tending to mislead.  If the purchase
between the parties was intended by all of them to hinder,
or delay, or defraud creditors, it surely cannot be doubted
that the sale was void as to creditors.     *     *     The in-
tent to defraud creditors will vitiate a transfer of property,
although made upon valuable consideration."

In his reply to the petition for a rehearing, Chief-Justice
WALKER still makes no allusion to the part of the charge we
have italicized, and we are convinced that his statement of
it, copied above, contains all he deemed important.  Thus
construed, there can be no question that he stated the legal
principle correctly.  We should do his opinion injustice, if
we were to place a construction on the charge different from
his, and write him down as affirming what he never intended
to affirm.  He did not intend to say that the mere effect of
· defeating one creditor, by preferring another, would be a
fraud on the creditor defeated.  If he had done so, he would
have overruled *Borland v. Mayo,* and *Young v. Dumas, supra.*
This he could not have intended, for he quoted each of them
without dissent, and drew a distinction between those cases
and the case in hand.

If the charge in *Pulliam v. Newberry* asserts the propo-
sition, that a deed from debtor to creditor, which secures a
preference over other creditors, operates, *per se,* to hinder,
delay, or defraud such non-preferred creditors, and is there-
fore void, it is not in harmony with any of our other decis-
ions ; and, with such construction, we could not follow it.
Differing from our predecessors, we think the charge asked
in that case was, at least, calculated to mislead the jury, and
that it should not have been given.

[5.]  It is contended for appellees, that the present deed
should be declared fraudulent, because Creswell, the grantor,
was permitted to remain in possession of the property for
several years after the deed was executed.  In *Twyne's case,*
3 Rep. 81, the main ground on which Twyne was adjudged
guilty was that, notwithstanding Pierce had executed to him
an unconditional deed of bargain and sale, still Pierce was
permitted to remain in the possession, use, and enjoyment of
the property.  No explanation appears to have been offered
of this continued possession of Pierce.  This led the Court
of Star Chamber, in which the trial was had, to infer that
there was a secret trust for the benefit of Pierce, notwith-
,standing there was a *bona fide* debt from Pierce to Twyne, in
payment of which it was alleged the conveyance was made.
This rule was evidently a stern one ; but it was stern in favor

of honesty and the payment of debts. It doubtless worked oppressively in some instances, but the general result was good. It greatly hindered and obstructed the making of fraudulent conveyances in secret trust, by withholding from parties the fruits which would result from their successful execution. It is, perhaps, to be lamented that the rule was ever departed from. It is, however, not the rule of this State. Such continued possession in the grantor is, at most, only *prima facie* evidence of fraud, and may be rebutted or explained by proof; and proof of a *bona fide* contract of hiring, or lease, will, as a general rule, repel the presumption of fraud.—*Upson v. Raiford*, 29 Ala. 188; *Millard v. Hall*, 24 Ala. 209; *Mayer v. Clark*, 40 Ala, 259; *Hobbs v. Bibb*, 2 Stew. 54; *Noble v. Gunter*, 16 Ala. 77; *Andrews v. Jones*, 10 Ala. 400.

[6.] It is also objected against the *bona fides* of this deed, that the debtor and creditor resorted to undue and unusual particularity, in consummating their contract; that they procured two of their neighbors to appraise the property, and not only to witness the execution of the deed, but to witness the receipt and cancellation of the indebtedness from Creswell to Crawford. This very great and unusual particularity, it is contended, furnishes badges of fraud. Circumstanced and related as these parties were, it was very natural they should expect that, when the fact of the conveyance was made known, it would produce a sensation among the non-preferred creditors, if not provoke litigation to set it aside. That Creswell's creditors had become alarmed as to his condition and prospective solvency, is shown by the fact that Coleman himself had requested of him that he should be made safe by a mortgage. Had this request been acceded to, it is quite certain that the other creditors, who were not secured, would have been dissatisfied; and, instead of having him actor, in attacking as fraudulent the conveyance made to another, he might have been defendant, endeavoring to maintain the *bona fides* of a similar preference given to himself. When a failing debtor pays or secures one or more creditors, at the expense of others, it is human nature that the non-secured creditors should feel aggrieved. But this is one of the inevitable results of allowing a failing debtor, who cannot meet all his liabilities, to prefer whom he will pay. After a transaction is consummated, ingenious counsel can always point out objections to the manner of its doing. If done quietly, and without witnesses, then the complaint is that it was secretly done. If unusual publicity, or particularity, characterize the transaction, then this is urged as a badge of fraud. We submit if this does not savor of the water-test, which, in former years, was wont to be applied to

those suspected of witchcraft. If they sank, they were inno-
cent; but then they incurred great hazard of losing their
lives by drowning. If they swam, they were adjudged witches,
and perished at the stake. It was simply a chance game as
to the manner of their taking off. In *Twyne's case, supra*, it
was said, "When any gift shall be to you in satisfaction of a
debt, by one who is indebted to others also: 1. Let it be
made in a public manner, and before the neighbors, and not
in private, for secrecy is a mark of fraud. 2. Let the goods
and chattels be appraised by good people to the very value,
and take a gift in particular in satisfaction of your debt."
The appraisement in the present case was made by two per-
sons living in the vicinage, and there is no attack, either in
the proof, or in the argument, on the fairness of the valua-
tions, or the intelligence and good character of the valuers.

Much is said of secrecy, prevarication, and fraudulent con-
duct, alleged to have been practiced on 5th October, 1866.
We deem it unnecessary to comment on this; for, if true, it
only affects the execution of the mortgage, which, in this
connection, is out of view. It can exert no influence on the
*bona fides* of the deed, which had been executed the day
before.

We do not think the complainants below have strength-
ened their case by the testimony taken. On the contrary,
we think the entire record, as now presented, makes a
stronger case in support of the deed of October 4th, 1866,
from Creswell to Crawford, than was made by the pleadings
alone, when the case was here before. We have carefully
considered the decision of our predecessors, made on the
former hearing of this cause (50 Ala. 590), and, with them,
affirm the validity and *bona fides* of the deed from Creswell to
Crawford. The chancellor erred in decreeing otherwise.
See, also, *Carter v. Happel*, 49 Ala. 539.

[7.] Do the deed to Crawford, of October 4th, 1866, and
the mortgage to Crawford and Webb of October 5th, 1866,
collectively constitute a general assignment, under section
2126 of the Code of Alabama? When this case was formerly
in this court, it was decided that they do not, as we have
before stated. We concur with our predecessors in this
view. The deed to Crawford being *bona fide* when executed,
and vesting the title in him to the property therein con-
veyed, we cannot hold that the mortgage, made subsequently,
at the request of Webb, even if it had conveyed all the re-
maining property to Creswell, could have the effect of
converting the deed to Crawford into a general assignment.
Deeds of bargain and sale proper, and assignments, have
very different properties and aims. By the one, Crawford

sought and obtained the absolute title to property. By the other, Webb sought and obtained security against a liability, supposed to be continuing. And while we are not inclined to draw nice distinctions between assignments and mortgages, or to apply technical rules in the construction of section 2126, Code of Alabama, which section we think highly beneficial in its policy, we think we should stretch it beyond the intention of the law-makers, if we hold that it embraces this deed, which has none of the ear-marks of an assignment in it.—See *Holt v. Bancroft*, 30 Ala. 193; *Price v. Mazange*, 31 Ala. 701; *Warren v. Lee*, 31 Ala. 440; *Longmire v. Goode*, 38 Ala. 577; *Tillon v. Britton*, 4 Halst. 121, 136; *Meredith Manufacturing Co. v. Smith*, 8 N. H. 347; *Low v. Wyman*, Ib. 536; *Danforth v. Dent*, 5 Foster, 155; Burrill on Assignments, 3 ed. § 4; *Fairbanks v. Haynes*, 23 Pick. 323; *Housatonic Bank v. Martin*, 1 Metc. Mass. 294; *Bates v. Coe*, 10 Conn. 280; *Lamson v. Arnold*, 19 Iowa, 480.

[8.] Having ascertained that the deed to Crawford is a valid conveyance, and that the mortgage to Crawford and Webb is constructively fraudulent and inoperative, and that the two instruments do not together constitute a general assignment; the remaining questions are, whether there is any, and what liability, on Crawford, growing out of the mortgage, which we have declared fraudulent. We confine ourselves to liabilities resting on him, because Webb never was in possession of any of the mortgaged property, or its proceeds.

As we said in the opening of this opinion, the original bill, filed February 14th, 1868, does not charge that the mortgage was fraudulent, and does not assail it for any alleged bad faith in its execution. The only complaint made of it is, that it and the deed to Crawford, taken together, constitute a general assignment; and the only prayer for relief, based upon it, is, that the two conveyances be administered together as a general assignment. The original bill makes no allusion to the sale of the house and lot to Mrs. Jolly, or to the proceeds thereof. The mortgage conveys only the tract of land, containing about 42 acres, known as the Gordon land, and the then growing or ungathered cotton crop of said Creswell. No mention is made in the mortgage of the house and lot sold to Mrs. Jolly, or of the proceeds thereof. The amended bill, filed November 28, 1868, contains the first charge that the mortgage is fraudulent. It also brings to view the said sale to Mrs. Jolly, and charges that it too was fraudulent; and avers that the money received from her was paid to Crawford or Webb. Said amended bill seeks to hold the mortgagees accountable in this suit, for the moneys so

received for the cotton, and for the lot sold to Mrs. Jolly; and also seeks to condemn the Gordon lands of 42 acres, conveyed by the mortgage, on the same ground of fraud in its execution.

Long before the filing of the amended bill, to-wit, in March, 1868, Crawford, having ascertained that no liability rested on him and Webb by virtue of the administration bonds, paid over to Creswell the proceeds of the cotton, and of the lot sold to Mrs. Jolly. The Gordon land of 42 acres then remained unsold; but in 1869, after Crawford and Webb has answered the original and first amended bills, the Gordon land was sold by the sheriff, and purchased and paid for by Crawford. The judgment under which this land was sold had no execution lien which antedated the filing of, and answers to the first amended bill.—See *Dane v. McArthur*, at the present term.

If the deed and mortgage in the present case had been declared a general assignment, there is no question that all the property conveyed by each would have been held to be *in gremio legis*, from the time of the service of summons under the original bill—February 17, 1868. Crawford would then have been held accountable for any portion of it which he afterwards permitted to pass from his hands. Against such claim and such result, he would be adjudged to have parted with the fund in his own wrong. The law would not tolerate such trifling with its process. But the two conveyances are not a general assignment, and hence this rule does not apply.

The only claim which complainants can assert to the property described in the mortgage, and to the money received from Mrs. Jolly, is under their first amended bill. This contains the first notice to defendants—the first averment, on which complainants can base a claim "to subject to the payment of their debts property which has been fraudulently transferred, or attempted to be fraudulently conveyed by their debtor."—Code of Ala. § 3886. The filing of such bill, and notice of it, actual or constructive, fastened a lien on all property then held by defendants under fraudulent or voluntary conveyance or pledge, which the bill sought to condemn. This lien would prevail over all other liens or titles, afterwards accruing. But such lien can have no relation back.—See *Dargan v. Waring*, 11 Ala. 988; *Eaton v. Patterson*, 2 Stew. & Por. 9; *Burdine v. Maltbie*, 3 Stew. & Por. 417; *Holt v. Bancroft*, 30 Ala. 193.

Under these rules, the complainants cannot hold Crawford responsible for the proceeds of the cotton conveyed in the mortgage, nor for the moneys received from Mrs. Jolly. The 42 acres, known as the Gordon land, and reasonable rent

therefor since it passed under the control of Crawford, the complainants are entitled to.

The decree of the Chancery Court is reversed, and this court, proceeding to render the decree which that court should have rendered, doth order and decree, that the said land, known as the Gordon land, is subject and liable to the claim of complainants; and the register of said court, after giving the notice required in sheriff's sales of lands, will sell the same before the door of the court-house in Greene county, on the first Monday of a month, to the highest bidder for cash, make proper conveyance to the purchaser, and put him in possession. Of the proceeds, he will pay the costs hereinafter adjudged against the complainants; and any balance he will report to the Chancery Court, for directions as to its application. He will report his sale to the Chancery Court for confirmation. And all title held or claimed in and to said lands, by any of the defendants to this suit, is divested out of them, and vested in such purchaser, when the sale shall have been confirmed. It is referred to the register to take proof, and report to the Chancery Court a proper rent of said Gordon land, for each year since the same passed under the control of said Crawford, charging interest upon each annual renting until the coming in of the report, but allowing him credit for all taxes paid; and to this end he is allowed to use the proofs on file, to re-examine witnesses heretofore examined, and to hear any legal testimony that may be offered. Let the costs of this appeal in this court, and in the court below, be paid by the appellee; the costs in the Chancery Court to be taxed by the register, exclusive of costs of appeal, to be paid, four-fifths by the complainants, and one-fifth by James Crawford; the costs of executing the reference hereinabove ordered, to be paid by James Crawford; and the bill in this cause, so far as it seeks relief other than that hereinabove granted, is hereby dismissed. All other questions are reserved for decision by the chancellor.