# Levy & Co. *v.* Williams.*

*Creditors' Bill in Equity to set aside Fraudulent Conveyances.*

1. *Sale by insolvent debtor to creditor; validity as against other creditors.* A failing or insolvent debtor may sell a part, or the whole of his property, in payment of an antecedent debt, to the exclusion of his other creditors ; and if the debt is *bona fide*, its amount not materially less than the value of the property, and no use or benefit is reserved or secured to the debtor, the transaction will be sustained, without regard to any attendant circumstances or badges of fraud, the intentions of the debtor himself, or notice of his intentions on the part of the purchasing creditor.

2. *Same.*—The purchasing creditor can not go beyond the permissible purpose of securing the payment of his own debt, and, in effecting this purpose, must not unnecessarily hinder or delay other creditors, or impair their rights, by placing it in the power of the debtor to effectually screen a part of the proceeds of sale, when he has knowledge of facts sufficient to create a reasonable belief of such intention ; and when his purchase is made partly in payment of an antecedent debt, and partly for money paid, the same rule is applicable as to purchasers on a new consideration, and the payment of the past debt is a circumstance to be considered in determining the good faith of the transaction.

3. *Same.*—Although the purchase may exceed the amount of the purchaser's debt, the fact of such excess does not invalidate the trans-

---

* This case was decided in April, 1885, but the opinion was mislaid for some time.
REP.

[Levy & Co. v. Williams.]

action, when reasonably necessary for attaining the lawful purpose of satisfying the debt; but this means, not a necessity created by the debtor's unyielding demand for cash, but a reasonable necessity arising from the nature, situation, or condition of the property.

4. *Same; as applied to this case.*—In this case, the evidence establishing the insolvency of the debtor at the time the sale was made, and his fraudulent intent to convert his lands into money, not for the payment of his debts, but for the avowed purpose of procuring family supplies and enabling him to carry on his business, the purchasing creditors having knowledge of his embarrassed condition, and notice of facts sufficient to charge them with knowledge of such fraudulent intent; *held,* that their purchase of three tracts of land, at the aggregate price of $1,000, of which amount $600 was paid in cash, and the balance in satisfaction of the creditor's antecedent debt, was fraudulent as against other creditors, although the debtor refused to sell any one parcel of the land separately.

5. *Exemptions to partners.*—Partners can not claim an individual exemption in the partnership property, during the continuance of the partnership; but, when one partner sells out his interest to the other, without reservation, the effects become the exclusive property of the purchaser, discharged from any lien on account of partnership debts, and he may claim an exemption in them, as against the partnership creditors, if the sale was fair and *bona fide.*

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. THOS. COBBS.

The bill in this case was filed on the 1st of July, 1881, by M. P. Levy & Co., Leinkauff & Strauss, and other mercantile partnerships doing business in Mobile, as creditors of Edward Williams and W. L. Brasfield, and of the partnership of Williams & Brasfield, who carried on a mercantile business at Jefferson, in Marengo county; against said Williams and Brasfield, individually and as late partners, and against Newhouse Brothers, Wollner, Hirschberg & Co., and L. J. Pace; and sought to set aside certain sales and conveyances of property made by said Williams and Brasfield, individually and as partners, to their co-defendants, on the ground of fraud, and to have the property conveyed condemned and sold for the satisfaction of the debts due to the complainants respectively; also, for a discovery and account, and to set aside a claim of exemption made by Williams in and to property which, as alleged, had belonged to said partnership of Williams & Brasfield.

The complainants' debts aggregated nearly $5,000, and were contracted for goods sold and delivered by them respectively, prior to March, 1881, to said Williams & Brasfield. The conveyances sought to be set aside were these: (1.) A deed executed by said Williams and wife, dated March 26th, 1881, by which they conveyed to Newhouse Brothers, in consideration, as recited, of $800 in hand paid, two tracts of land, one containing 280 acres, and the other 160 acres. (2.) A deed executed by said Williams and Brasfield, describing themselves as late partners, and their wives joining with them, dated also

the 26th March, 1881, by which they conveyed to Newhouse
Brothers, in consideration, as recited, of $200 in hand paid, a
tract of land containing 160 acres.   (3.) A deed executed by
said Williams and wife, dated March 28th, 1881, by which they
conveyed to Wollner, Hirschberg & Co., in consideration, as
recited, of $1,220.77 in hand paid, an undivided half interest
in a tract of land containing 1,100 acres, and two smaller tracts,
together containing 420 acres, on which there was a prior
mortgage to Agnew, Scales & Co.   (4.) A sale and assignment
by said Williams to Wollner, Hirschberg & Co. of a stock of
goods, with notes and accounts, on the consideration, as recited,
of $450.59 in hand paid, which was also dated the 28th March,
1881.   (5.) An assignment of notes and accounts by said Wil-
liams to L. J. Pace, which was dated the 28th March, 1881,
and recited the payment of $150 as its consideration.   (6.) A
declaration and claim of exemption, made by said Williams on
the 28th March, 1881, duly verified by affidavit ; the property
claimed consisting of mules, horses, &c., aggregating $1,000
in value.   The bill alleged that, at the time these several con-
veyances were executed, the said Williams and Brasfield were
insolvent, and were known by the several grantees to be insolv-
ent ; that Williams, a few days before the 26th March, 1881,
submitted " a written proposition of compromise to his creditors
in Mobile, with schedules of his debts and property ; that said
several conveyances were executed, while negotiations were
pending with said creditors, for the purpose of hindering, de-
laying and defrauding them ; that the grantees had knowledge
of the insolvency of said Williams & Brasfield, and of their
fraudulent intent.   It was alleged, also, that the firm of Wil-
liams & Brasfield was not dissolved on the 26th March, 1881,
or, if dissolved, no notice of the dissolution had been pub-
lished, or given to the complainants ; and that the property
claimed as exempt by Williams belonged to the partnership.

Answers were filed by the several defendants, denying the
charges of fraud, asserting the validity of their respective con-
veyances, and stating, in answer to interrogatories, the consid-
eration of each, the value of the property conveyed, &c.
Williams asserted, also, that his partnership with Brasfield was
dissolved some time before the several conveyances were exe-
cuted, he buying out the interest of Brasfield, and assuming
the debts ; and he alleged that the property claimed by him as
exempt was his individual property.   After the filing of the
bill, he made a new declaration and claim of exemption, speci-
fying the same property as before.

On final hearing, on pleadings and proof, the chancellor held
and decreed as follows: (1.) "That the conveyances made by
Williams to Newhouse Brothers were not made to hinder, de-

lay or defraud the creditors of said Williams, or of Williams & Brasfield, but were made *bona fide*, and for a valuable consideration, the property sold at a price approximating the value thereof; and said sale and conveyances are sustained." (2.) "That the several sales and conveyances made by said Williams to Wollner, Hirschberg & Co. were made by him in good faith, and were not made to hinder, delay or defraud the creditors of said Williams, or of Williams & Brasfield, but were made to pay the indebtedness of said Williams & Brasfield to said firm; the price for which the property sold was not grossly inadequate to the true value thereof, and said sales and conveyances are confirmed." (3.) "That the complainants have a complete and adequate remedy at law to contest said Williams' claim of exemption, and this court has no jurisdiction to try the same." (4.) "That the sale of the notes, accounts and mortgages, made by said Williams to L. J. Pace, as charged in the bill, was fraudulent and void as to the complainants, and complainants are entitled to subject the same to their demands."

The complainants appealed from this decree, and here assigned each part of it as error, except as to the conveyance to Pace.

OVERALL & BESTOR, and JAMES E. WEBB, for the appellants. The intent with which an act is done, in any case, can only be proved by circumstances; and when a fraudulent intent is to be proved, a greater difficulty is encountered, on account of the secrecy and care with which the parties guard their actions. But certain general rules have been laid down, by which the question of fraudulent intent is to be determined, and certain badges of fraud clearly established. A man is presumed to intend the necessary consequences of his acts.—Bump on Fraud. Conv., 25; *Pope v. Wilson*, 7 Ala. 690; *Gazzam v. Poyntz*, 4 Ala. 374; *Lehman, Durr & Co. v. Kelly*, 68 Ala. 200. Wollner and Newhouse were brothers-in-laws, Wollner was a cousin to Pace, and Pace was a cousin to Williams; and while this relationship does not, of itself, render any conveyance fraudulent or void, it is a circumstance which will be considered, with others, in determining the good faith of all the transactions among them, by which Newhouse and Wollner obtained property more than sufficient to pay their debts, Williams obtained $600 in money, and was employed by Pace as his clerk in selling the goods. At the time these several transactions were consummated, negotiations were pending between Williams and his creditors, for a compromise and settlement of his indebtedness; and Wollner, Hirschberg & Co. were parties to the negotiations, by which an extension of time was to be

granted to Williams. If Wollner, Hirschberg & Co. entered into this agreement, and then violated it, in order to get a preference for themselves, they were guilty of bad faith and fraud; and if they entered into the negotiations only to throw the other creditors off their guard, until they could consummate a private arrangement for themselves, they were equally guilty of fraud.—*Seaman v. Nolen*, 68 Ala. 463; Kerr on Fraud, 150; *Tate v. Williams*, L. R., 2 Ch. Ap. 61; 3 Wait's Actions & Defenses, 444. The fraudulent intent of Williams can not be doubted; and though Newhouse denies that he knew of such insolvency, he admits facts which charge him with notice.—*Crawford v. Kirksey*, 55 Ala. 293; *Lehman, Durr & Co. v. Kelly*, 68 Ala. 200. The purchase by Newhouse went beyond the permissible purpose of securing the payment of his own debt, and placed $600 in the debtor's hands, safe from the reach of creditors, when he knew, or had good reason to believe, that Williams was insolvent, and that his purpose was illegal; and the entire transaction is fraudulent in law.—*Lehman, Durr & Co. v. Kelly*, 68 Ala. 202; *Seaman v. Nolen*, 68 Ala. 466; *Covanhoven v. Hart*, 21 Penn. St. 496; *Hopkins v. Langton*, 30 Wisc. 379.

R. H. CLARKE, *contra*. (No brief on file.)

CLOPTON, J.—In *Hodges Bros. v. Coleman & Carroll*, 76 Ala. 103, we held, that a debtor in failing circumstances, or insolvent, may sell a part, or the whole of his property, in payment of an antecedent debt, to the exclusion of his other creditors; and that a sale on such consideration, the debt being *bona fide*, and its amount not materially below the value of the property, will be sustained, whatever may have been the attendant circumstances or badges of fraud, or may have been the intentions of the debtor, and whatever notice of such intentions the purchasing creditor may have had, if no use or benefit is secured to the debtor. The rule declared in this case was re-affirmed in *Meyer v. Sulzbacher*, 76 Ala. 120. The rule rests on the right of the vigilant creditor to obtain payment of his debt, and on the right of the debtor to prefer his creditor. Such preference by sale, for the purpose of paying the debt, without the debtor reserving, or being promised any use or benefit, does not operate any legal damage to the other creditors. The justness and sum of the debt being established, and it being ascertained that the value of the property does not materially exceed its amount, and that no use or benefit is reserved by or secured to the debtor, all further inquiry is foreclosed.

The justness and amount of the debt due to Wollner, Hirsh-

berg & Co., is not disputed. While the attorney's fee and costs paid in contesting the sums due on the prior mortgage, which they agreed to pay, and the expenses incurred in collecting the mules, should not be considered as constituting a part of the antecedent debt in ascertaining its amount, we can not say, on an examination of the evidence, that, in view of the circumstances and condition of the property, the chancellor erred in finding that the value did not materially exceed the amount of the debt; and the evidence does not show any use or benefit reserved by or secured to the debtor.

The sale of the lands to Newhouse Brothers does not come within the protection of this rule. While the vigilant creditor may procure the payment of his claim against a failing or insolvent debtor, by a purchase of his property, he must not go beyond the permissible purpose of securing his own demand. If he go beyond this, and secure a benefit to the debtor, he will thereby violate the letter and spirit of the statute, and his conveyance will be set aside for fraud.—*Crawford v. Kirksey*, 55 Ala. 282. The whole purpose of the creditor must be the payment of his debt. This is the boundary of the reward and protection, which the law gives the vigilant creditor. In effecting this purpose, he must not unnecessarily hinder or delay other creditors, or impair their rights, by placing it in the power of the debtor to effectually screen a part of the proceeds, the creditors having knowledge of facts sufficient to create a reasonable belief that such is his intention. No part of the purpose must be ease or favor to the debtor. The law will not allow the use of a debt as a cover of property, or to hinder and embarrass other creditors in the collection of their demands. When, therefore, a creditor purchases property from his debtor, a part of the consideration being the payment of an antecedent debt, and a part money paid, the rules applicable are the same as to purchasers on a new consideration, the payment of a just debt being a circumstance to be considered in pronouncing on the good faith of the transaction. There is a marked distinction between a sale for the sole purpose of preferring a creditor, and a sale the effect of which is partly a preference, and partly a benefit to the debtor.

The facts established by the evidence show the fraudulent intent of Williams. The arrangement made in Mobile, a few days previously, by which his creditors agreed to extend their debts another year, and to advance him fifteen hundred dollars to carry on his business, on his giving a mortgage to secure them; his letter of March 24th, sending schedules of his property and liabilities, in accordance with the previous understanding, but proposing a modification so as to give him longer time, and urging that all his creditors must fare alike; his over-

estimate of the value of his property; the sale of the lands to Newhouse Brothers on March 26th, and his reception of nearly six hundred dollars in money, which he withheld from his creditors; his withdrawal, on the same day, of the arrangement with the complainants, and asking them for a proposition ; and his claim of other property, as exempt from the payment of his debts, to the value of one thousand dollars, made two days thereafter, are too clearly indicative of an intent to defraud the complainants to admit of serious question. But Williams' intent will not vitiate the sale to Newhouse Brothers, unless they participated in it to some extent. It is not necessary that they should have had a specific intent to defraud, but if, having knowledge of Williams' intent, or of facts sufficient to put them on inquiry, they aided in enabling him to consummate his purpose, the sale will be invalidated.

The discrepancy between the evidence of Newhouse and Jones casts suspicion on the transaction. Newhouse's account is, substantially, that about the 26th of March he accidently met Williams in Demopolis, and pressed him for the payment of the debt to Newhouse Brothers, which had been some time past due, and which he had repeatedly promised to pay. On Williams expressing his inability to pay, security in some way was insisted on; and upon Williams' assurance that he was unable to secure the debt, Newhouse proposed to purchase property, and Williams said he would sell him property, if he had the legal right, but would first consult his attorney. After consulting his attorney, Williams went back to the office of Newhouse Brothers, and proposed to sell them the lands; they refused, at first, to purchase, as they did not wish to pay so much in cash, and requested Williams to convey to them a piece of the land about equal in value to the amount of his indebtedness. This Williams refused to do, saying he wanted some cash for purposes which will be hereafter noticed. Newhouse Brothers bought the lands at one thousand dollars, and, after deducting the aggregate amount of their debt, and two other debts named by him, paid him five hundred and ninety-six dollars in cash. Newhouse says no one was present at the time the trade was made, but Jones was present when the deed was executed. Newhouse's account shows an *accidental* meeting in Demopolis, eleven miles from the residence of Williams, excluding the idea or supposition of any previous conference, and the consummation of the sale on the same day. The testimony of Jones shows that they were together in his office on the day preceding, when he learned from one, or both of them, that Williams was indebted to Newhouse Brothers, who were urgent in demanding payment, and that some discussion followed, but nothing was agreed on. On the next day they came

12

together to his office, when Newhouse stated, that he. had informed Williams that, as he could not pay Newhouse Brothers in money, they were willing to receive payment in property; that Williams said he was willing to pay in that way ; and both desired to know of witness if such payment would be legal, and upon being assured it was legal, they proceeded to arrange the terms of the settlement, and the trade progressed, and was made as testified by Newhouse. Instead of an accidental meeting on the 26th, and completing the arrangement in one day, they were together in Jones' office on the 25th, and were engaged parts of two days. Instead of Williams going alone to consult his attorney, and returning to the office of Newhouse Brothers, where the purchase was agreed on, they went together to consult Jones, and agreed on the terms in his office ; or, if the terms were agreed on in the office of Newhouse Brothers, when Jones was not present, they subsequently went substantially through the same course of discussion and agreement in the office of Jones. These discrepancies induce a suspicion that Newhouse has not declared all that passed between him and Williams.

The debt of Williams to Newhouse Brothers amounted to two hundred and eighty-two dollars, while the price paid for the lands was one thousand dollars. In Bump on Fraud. Conv., p. 194, the rule is laid down as follows: "Although the purchase exceeds the amount of the indebtedness, still, if the excess is reasonably necessary for attaining the lawful purpose of satisfying the actual debt, the purchase to the whole extent may be attributed to the same motive of self-interest; and therefore the mere fact of the excess does not invalidate the transaction, unless there are other circumstances tending to show a fraudulent intent on the part of the purchaser." We do not understand the author to mean a necessity created by the unyielding demand of the debtor for cash, but a reasonable necessity arising from the nature, situation, or condition of the property. There were three separate tracts of land, one of which was valued at three hundred dollars. The purchase of this tract alone, or of either one of the tracts, would not have excited any suspicion of fraud. Newhouse Brothers did not wish to purchase all of the lands, but Williams required a purchase of all or none. It is no excuse for the preferred creditor, in such case, that his purpose was to secure payment of an honest debt, and that he made the only and best arrangement which the debtor was willing to make.— *Wiley, Banks & Co. v. Knight*, 27 Ala. 326. The demand of their debtor, that they should purchase all three tracts, when one of them was sufficient to pay their debt, and the other two preferred creditors named, ought to have satisfied them, that the sole

[Levy & Co. v. Williams.]

purpose of the debtor was not the payment of an honest debt, to make a mere preference of creditors, but that his ultimate purpose for converting real estate into money, was, in the terse language of Chief Justice Black, "because money is more easily shuffled out of sight than land," and that he was employing the payment of a debt as the means of accomplishing this purpose.—*Lehman, Durr & Co. v. Kelly*, 68 Ala. 192.

While Newhouse Brothers did not know that Williams was insolvent, they believed that he was unable to pay all of his indebtedness. Slight inquiry would have led to the discovery that he was insolvent; that his other real estate was under mortgage; that his stock of merchandise was of inferior quality, and small in amount; that with such stock the cash he received could not enable him to carry on his business under the burden of indebtedness that was pressing on him, and that this pretense for wanting cash was untrue. Being charged as having knowledge of these facts, which reasonable inquiry would have disclosed, it was their duty to pause and inquire before completing the purchase. Having constructive notice of his fraudulent purpose, they must suffer the condemnation of the law, by reason of the fraud which they enabled their debtor to perpetrate.—*Lehman, Durr & Co. v. Kelly, supra.*

An insolvent debtor is not denied the right to sell his property; but the purpose of the sale must be to appropriate the proceeds, to the full extent, to the payment of his debts; and if the purchaser has a reasonable expectation that they will be so applied, he is not chargeable with participation in any secret fraudulent intent of the debtor. Williams' avowed purpose for selling all the lands was, that he wanted cash to carry on his business, and procure family supplies. The legal duty of a debtor is to keep his property open to his creditors, and not to put it beyond their reach, nor dispose of it for any purpose other than the payment of his debts. Lands, subject to the claims of the creditors, were converted into cash, in part, with the expressed design of the debtor not to use it in paying any of his debts. A substantial benefit was secured to the debtor, to the injury of the other creditors. It is not necessary that Newhouse Brothers should have had an actual intent to hinder, delay, or defraud the other creditors of Williams. Having knowledge of his inability to pay his other indebtedness, and co-operating with him in converting his lands into cash, with the avowed intention to expend it to his personal use, to the exclusion of his creditors, they went beyond the permissible purpose of securing the payment of their debts. Such sale the law condemns as fraudulent.—*Seaman v. Nolen*, 68 Ala. 463; *King v. Kenan*, 38 Ala. 63; *Sims v. Gaines*, 64 Ala. 392; *Reynolds v. Cook*, 31 Ala. 634; *Lukins v. Aird*, 6 Wall. 78.

Partners can not, during the continuance of the partnership, claim an individual exemption in partnership property.—*Giovani v. First Nat. Bank*, 55 Ala. 307. This rests on the principle, that the title and ownership of partnership property is in the partnership, and neither partner has any exclusive right to any part thereof. Partnership creditors, as such, have no lien on the property. Each partner has a lien to pay the partnership debts, and through this lien an equity in favor of the creditors may be worked out. One partner may sell to his co-partner, and when he sells, without a reservation, his lien falls, and the effects become the exclusive property of the purchasing partner.—*Reese & Heylin v. Bradford*, 13 Ala. 837. In such case, if the sale is fair—no fraud intended—an exemption may be claimed. We find no evidence in the record that the sale of Brasfield to Williams was made with any fraudulent intent. It may be that the chancellor had jurisdiction to try the claim of exemption; but, if so, his declining to take jurisdiction is error without injury to complainants.

The decree is reversed, as to the sale and conveyance to Newhouse Brothers, and affirmed in all other respects. A decree will be rendered, that the sale and conveyance to Newhouse Brothers are fraudulent and void as to complainants, and that the lands conveyed to them by Williams and by Williams & Brasfield, be sold by the register for the satisfaction of complainants' demands. The costs of appeal in this court, and in the Chancery Court, will be divided between appellants and Newhouse Brothers. L. J. Pace will pay one-fifth of the costs of suit in the Chancery Court, and four-fifths will be divided between complainants and Newhouse Brothers.