# Carter Brothers & Co. *v.* Coleman.

*Creditors' Bill in Equity to set aside Fraudulent Sale of Goods.*

1. *When creditors may come into equity; adequacy of legal remedies.* Under statutory provisions enlarging the original jurisdiction of courts of equity (Code, § 3886), a creditor at large, whose debt has not been reduced to judgment, and who has no.lien, may maintain a bill in equity to set aside a fraudulent conveyance executed by his debtor, and to subject the property, or its proceeds, in the hands of the fraudulent grantee, to the satisfaction of his debt; and the existence of a legal remedy does not destroy the equity of the bill.

2. *Sale by failing or insolvent debtor; validity as against other creditors.* A *bona fide* creditor may purchase property from his debtor, though failing or insolvent, in absolute payment of his debt, if the price paid is fair and adequate, and no benefit is reserved to the debtor; but, if he purchases property in excess of his debt, paying the difference in money, the validity of the transaction, as against other creditors, is to be determined by the rules which apply to a purchase on an entirely new consideration.

3. *Same; notice and participation in fraudulent intent by purchaser,*

12

82 177
93 67

82 177
96 344
97 389

82 177
105 316

82 177
122 347

82 177
123 555
124 212

82 177
132 79

[Carter Brothers & Co. v. Coleman.]

*or grantee.*—When the purchasing creditor, paying money in excess of his debt, has knowledge of the debtor's insolvency or failing condition, and notice of his fraudulent intent, or of suspicious facts and circumstances connected with the transaction, sufficient to put him on inquiry, the sale will be set aside at the instance of other creditors; and when the bill alleges particular facts and circumstances showing the creditor's active aid and participation in accomplishing the debtor's fraudulent intent, it is not necessary to make that specific charge in words.

APPEAL from the Chancery Court of Hale.

Heard before the Hon. THOS. COBBS.

The bill in this case was filed on the 29th March, 1886, by Carter Brothers & Co. and others, non-resident merchants doing business in Louisville, Nashville, and Baltimore, as creditors of James B. Coleman, against the said Coleman and A. Lawson, who were brothers-in-law, having married sisters; and sought to set aside, on the ground of fraud, a sale of his stock of goods by said Coleman to Lawson, which was made on the night of March 20th, or the morning of March 21st, 1885, and to subject the proceeds of sale, in the hands of Lawson, to the payment of the debts due to complainants, and to any other creditors who might come in under the rules of practice and make themselves parties. According to the allegations of the bill, Coleman was engaged in business, in the town of Greensboro, "as a retail dry-goods and grocery merchant," and was indebted on the 20th March, 1885, to the several complainants in various sums, aggregating more than $2,000, for goods previously sold and delivered to him; some of the debts being evidenced by promissory note, and others by open account only. Carter Brothers & Co. brought suit against him on their claim, in the Circuit Court of Hale county, on the 21st March, 1885, and obtained judgment on the 12th October following; and another one of the complainants brought suit on the 24th February, 1885, and obtained judgment on the 10th April, 1885; and executions on each of these judgments was regularly issued, and returned "No property found." The bill alleged that Coleman was insolvent at the time of the sale to Lawson, "and that this was known to said Lawson;" that Lawson was a banker, and Coleman did all his banking business through Lawson's house; that many claims against Coleman were held by attorneys for collection, at and before the sale; that Lawson well knew his condition, and had notice that certain named attorneys held claims for collection against him; that the stock of goods sold to Lawson was worth $3,600; that the sale was made by Coleman "with full knowledge of his condition, and with the intent to hinder, delay, and defraud his credi-

tors, said Lawson having at the time notice of said intent; and that Lawson, a few days afterwards, "sold out said goods, not by retail, but as an entire stock." In addition to these allegations, the bill contained the following:

"On the 20th March, 1885, said Lawson was requested by a bank in Kentucky to become one of the sureties on a garnishment bond, at the suit of said Carter Brothers & Co. against Alex. Hafner, who was then negotiating with said Coleman for the purchase of the stock of goods then owned by said Coleman, but declined to make such bond, and informed said Coleman and Hafner of the fact that he had been so requested. On the said 20th March, 1885, said Coleman had been selling his stock of goods and merchandise by retail, and said Alex. Hafner had been offered the stock of goods at fifteen per cent. less than cost price, without any charge for carriage, and was engaged on that day in taking an inventory of said stock, which fact was well known to said Lawson. After said Lawson ascertained that preparations were being made to attach the goods, or to garnishee said Hafner, he notified them of what he had heard, and urged them to finish the inventory as soon as possible, and told them that, if they would send for him, he would come down to the bank, and let Hafner have the money to pay for the goods. Afterwards, Hafner demanded that Coleman should let some one be selected as trustee for his (Coleman's) creditors, to whom he (Hafner) might pay the purchase-money for the creditors. This was about half past twelve o'clock, on the night of March 20th. Coleman insisted that the money should be paid to him, and Hafner then told him 'that rather tnan pay him money which creditors had notified him they expected to get, and seeing that he was not willing to have any arrangement made to pay his creditors, he would not buy the goods.' Within one hour thereafter, Coleman had found Lawson, and at that hour of the night commenced a negotiation for the sale of his entire stock of goods to said Lawson; and before eight o'clock next morning Lawson had purchased the goods, without verifying the inventory, and had paid said Coleman a large part of the agreed price in money; the balance he deducted, claiming that amount as due to him by Coleman."

An amendment of the bill was afterwards allowed, in which the complainants alleged that they "did not discover the nature and character of the said sale by said Coleman to said Lawson, until the 7th April, 1885, when said Lawson as garnishee, in a suit brought by said Carter Brothers & Co. as plaintiffs, against said James B. Coleman as defendant, in the Circuit Court of Hale, made answer, a

copy of which, marked Exhibit C, is hereto attached, and prayed to be taken as ˙a part of this paragraph." In this answer, which, as shown by the exhibit, was made orally in response to questions asked, the garnishee stated, that the contract of purchase was made on the morning of March 21st, 1885, between the hours of seven and eight o'clock; that the value of the goods, as shown by the inventory, "was something over $3,000;" that he did not verify the inventory, taking for granted .that it was correct; that he bought the goods at a discount of fifteen per cent.; that he was acquainted with the attempted sale by Coleman to Hafner, and knew that the negotiations between them had been broken off; that Coleman came to his house, at one o'clock at night, and so informed him, and then proposed to sell the goods to him; that he had already promised to let Hafner have the money to pay for the goods, and it was understood that the parties were to come for him so soon as they got through with the inventory; that he took the goods to secure money due and owing to him by Coleman, between $1,400 and $1,500, and paid him the balance in cash; that he did not then know Coleman's insolvency, or embarrassed condition, though he had personal knowledge of several claims against him in the hands of attorneys; and that Coleman had used some of the money paid him by respondent, in part payment of some of these claims.

The chancellor sustained a demurrer to the bill, on the ground that the complainants had a plain and adequate remedy at law, and that it "fails to charge that said Lawson participated in the fraudulent intent charged against Coleman;" and his decree is now assigned as error.

WATTS & SON, for appellant, cited *Crawford v. Kirksey*, 55 Ala. 282; *Lehman, Durr & Co. v. Kelly*, 68 Ala. 192; *Hodges Brothers v. Coleman & Carroll*, 76 Ala. 103; *Meyer & Co. v. Sulzbacher*, 76 Ala. 120; *Abney v. Kingsland*, 10 Ala. 355; *Hurt v. Redd & Co.*, 64 Ala. 85; *Pulliam v. Dewberry*, 41 Ala. 168; 7 Blackf. 400; 7 J. J. Mar. 523; 12 Wall. 342; 21 Penn. St. 495; Kerr on Fraud and Mistake, 200.

EDW. DE GRAFFENREID, *contra.* - (1.) A conveyance, when supported by a sufficient consideration, can˙ not be avoided by the creditors of the grantor, on account˙ of an alleged fraudulent intent on his part, unless the grantee also participated in such fraudulent intent.—*Caldwell v. King*, 76 Ala. 149; *Leinkauff & Strauss v. Morris*, 66 Ala. 407; *Shealy v. Edwards*, 75 Ala. 411; *Lipscomb v. McClellan*, 72 Ala. 151; 71 Ala. 173. The bill does not allege participation by Law-

son in the alleged fraudulent intent of the debtor, Coleman; on the contrary, Lawson's answer as garnishee, made an exhibit to the amendment, disproves any fraudulent intent. (2.) The bill is wanting in equity, because its allegations show that the complainants have an adequate remedy at law.—*Dickinson v. Lewis, Garthwaite & Co.*, 34 Ala. 639; *Peebles v. Burns & Co.*, 77 Ala. 290; *Smith v. Cockrell*, 66 Ala. 64; 8 Ala. 743; 28 Ala. 160; Adams' Equity, 305, note 2; 1 Pom. Equity, § 178.

CLOPTON, J.—The appeal is taken from a decree sustaining a demurrer to the bill, which is a creditors' bill, brought by appellants to subject to the payment of Coleman's debts the proceeds of a stock of goods, alleged to have been fraudulently sold by him to his co-defendant, Lawson. The grounds of demurrer as assigned are, that complainants have an adequate, complete, and exclusive remedy at law, and that the participation of Lawson in the fraudulent intent of Coleman is not sufficiently charged.

The bill alleges that some of the complainants, after the sale, obtained judgment against Coleman, and a return of execution "No property found;" that the others are creditors at large; and that Lawson sold the goods within a few days after the purchase. A court of equity has original jurisdiction to assist a creditor having a lien, in carrying it into effect, by removing fraudulent transfers or conveyances of property on which the lien operates; and also to reach assets not subject to execution at law, when legal remedies have been exhausted by a return of execution "No property found." The statute confers an additional and enlarged jurisdiction, and now, by express statutory authority, a creditor without a lien may file a bill in chancery, to subject to the payment of his debt any property which has been fraudulently transferred, or attempted to be fraudulently conveyed by his debtor. The statute abrogates the rule requiring a lien in the one class of cases, and an exhaustion of legal remedies in the other, and operates to extend the jurisdiction to all cases of transfers or conveyances which offend the rights of creditors, whether with or without a lien, and though legal remedies may not have been exhausted. The right of every creditor to invoke the aid of the court to avoid fraudulent transfers or conveyances of property, has been too long and well established to require further consideration. The jurisdiction is not ousted by the existence of a legal remedy; and the creditor will not be prevented to pursue and subject property fraudulently transferred, though the debtor may own other

property sufficient to pay his debts.—*Lehman v. Meyer*, 67 Ala. 396; *Matthews v. Mo. Mut. Ins. Co.*, 75 Ala. 85; *Evans v. Welch*, 63 Ala. 250; Code, 1876, § 3886.

2. A creditor may purchase property of his debtor, though insolvent, or in failing circumstances, in payment of an existing debt, honestly due, if the consideration paid is fair and adequate, and no benefit is reserved to the debtor. In such case, a lawful right of preference is exercised, of which the other creditors can not complain; and the fraudulent intent of the debtor, though known to the purchasing creditor, will not invalidate the transaction. But the creditor will not be permitted to transgress the legitimate end of having paid or secured his *bona fide* demand; and can not offend the rights of other creditors, by placing it in the power of the debtor to conceal, or put beyond their reach a part of the proceeds, with notice of a fraudulent intent on the part of the debtor. When a creditor purchases property from his debtor, of value in excess of his debt, a part of the consideration being the payment of an antecedent debt, and a part money paid, the rules applicable are those on which the *bona fides* of a purchase on a new consideration is determined; the antecedent debt and its payment being circumstances to be considered, in connection with the other evidence, in ascertaining the character of the transaction.—*Levy v. Williams*, 79 Ala. 171.

3. The bill alleges facts, which, if proved, are sufficient to show on the part of Coleman an intent to hinder, delay, or defraud his creditors; that the consideration was paid by Lawson, partly by the payment of an antecedent debt, and partly in money; and that he had notice, at the time of the sale, of the fraudulent intent of Coleman. A vendee who purchases property from an insolvent or failing debtor, and pays him money, with knowledge of the fraudulent intent of the seller, or of facts and circumstances of a suspicious nature, having reference to the transaction, sufficient to induce inquiry, which, if pursued, would lead to the discovery of such fraudulent intent, renders aid in consummating the purpose of the debtor, sufficient to invalidate his purchase. —*Lehman v. Kelly*, 68 Ala. 192. But the bill not only charges notice in terms; it alleges facts and circumstances, which, if true, show more than acquiescence, or a reckless disregard of the perpetration of the contemplated fraud. The proposed sale of the goods to Hafner, at a price considerably less than cost; the occupation in taking an inventory during the day, and until midnight; the refusal of Lawson to become, on request of some of the complainants, surety on a bond to procure process of garnishment

against Hafner, in connection with his communication to Coleman and Hafner of what he had heard; his urging them to finish the inventory as soon as possible, and his offer, if sent for, to come and let Hafner have the money to pay for the goods; the commencement, immediately after Hafner refused to purchase the goods, of negotiation for a sale to Lawson, at an unusual and unseasonable hour; the haste with which the sale was consummated and the purchase-money paid, and the relationship between the parties, are facts and circumstances, admitted to be true by the demurrer, which *prima facie* show active participation in the fraudulent intent of Coleman, enabling him to prevent the appropriation of the money paid to his debts, with notice of his intent not to so appropriate it. The bill sufficiently avers the participation of Lawson in the alleged fraudulent intent of Coleman; and the allegations, if proved, and not explained consistently with honesty of purpose, would entitle complainants to relief.

Reversed and remanded.