# Carter Brothers & Co. *v.* Coleman *et al.*

*Bill in Equity to set aside Fraudulent Sale of Goods.*

1. *Fraudulent conveyances; sale of stock of goods to a creditor.*—A debtor, in failing circumstances, refused a fair price offered for his stock of goods, because the proposed vendee required that the purchase-money be placed with a trustee for the benefit of his creditors; and immediately and hastily thereafter, and for the same amount of purchase-money, sold the same goods to a creditor, his brother-in-law, who knew of his condition. The consideration was paid in part by extinguishment of the brother-in-law's claim, the balance in ·cash, with all of which the debtor paid other *bona fide* creditors: *Held*, the sale was lawful and valid.

2. *Constitutional law; banker; usury.*—Section 4435, Code 1876, making it a misdemeanor for *any individual banker* to charge usury in discounting bills and notes (now changed into § 4140, Code 1886) was unconstitutional.

APPEAL from Hale Chancery Court.
Heard before Hon. THOMAS W. COLEMAN.

[Carter Brothers & Co. v. Coleman et al.]

This case was before the court on former appeal on demurrer to original bill with exhibits and amendments, 82 Ala. 177. Coleman, a merchant, made a sale of a stock of goods to Lawson, his brother-in-law, the consideration of which was an antecedent debt of $1,400.00, consisting of two notes of Coleman, one for $1,000.00 and one for $400.00, discounted by Lawson, who was a banker, at 1 per cent. per month, and the balance in cash. The terms of sale showed that this balance was to be used in paying other creditors, and it was so used. Lawson knew, or was put on inquiry to know, the insolvent condition of Coleman. A sale of the same goods from Coleman to one Hafner was in contemplation, and Lawson was to furnish Hafner the purchase-money. The inventory of the goods had been completed about 12 o'clock at night, and Hafner wished the purchase-money put in the hands of a trustee to be paid to the creditors. Coleman refused to consent to this, and went to Lawson's house, notified him that the sale to Hafner had fallen through, and offered to sell the goods to him according to the inventory made for Hafner, with a discount of 15 per cent. from the cost price, the same terms offered to Hafner. This sale to Lawson was consummated the next day. The amount paid for the goods was fair and reasonable. Some of the debts discharged out of the money paid by Lawson, had not matured, but were owed by Coleman. The date of the consummation of the sale to Lawson, was March 21st, 1885. Complainants, Carter Brothers & Co., and other creditors, sought to set aside this sale as fraudulent, alleging it was made with intent to hinder, delay and defraud creditors, in which intent Lawson participated, and sought to subject the goods, or their proceeds, to the payment of debts due the complaining creditors. The chancellor dismissed the bill on final decree, and complainants appealed.

P. A. Tutwiler and Watts & Son, for appellants.

Edward DeGraffenreid, *contra.*

STONE, C. J.—The law condemns motives and intents, only when they are carried into an act which is itself illegal. If the end accomplished be lawful, it is immaterial what may have prompted it, provided the intent itself inflict no personal or pecuniary wrong, and does not aggravate the result. Hence it is that the prosecution and conviction of a guilty

person, no matter how malicious or selfish the motive, furnishes no ground for a malicious prosecution. Hence it is that the attempt to commit the highest crime—for instance, murder by poisoning—made by administering an ingredient that is perfectly harmless, is not a crime which human laws can punish.

It is settled by numerous rulings of this court that an insolvent or failing debtor, owing more than he has means to pay, may select and prefer a part of his creditors, pay them in full, exhaust his resources, and thus leave himself without means to pay anything to his other creditors. And, if in so doing, he part with his property absolutely at a reasonably fair price, reserve to himself no benefit growing out of the transaction, and there be no secret trust in his favor, or by which he is benefitted, the transaction will be upheld.—*Crawford v. Kirksey*, 55 Ala. 282; *Hodges v. Coleman*, 76 Ala. 103; *Carter v. Coleman*, 82 Ala. 177. Can it, in such case, make any difference, if the debtor *intend* to deprive his non-preferred creditors of all means for the collection of their claims? All men are presumed to intend the necessary or natural consequences of their conduct. The maxim extends further. If injury results, which, at the doing of the act complained of, was likely to follow in the ordinary course of events, the actor is responsible either civilly or criminally, as the injury inflicted may be a tort or a crime. Can an appreciable distinction be drawn between a conclusion of fact, which the law conclusively draws from incontestable premises, and direct proof of the same facts? Fraud without injury gives no right of action; and, as we have said, there is no room for fraud, in such transaction as we have been considering.

It is urged against the *bona fides* of this contract, that there was undue haste in its inception and consummation; that the inventory was completed about midnight, that at 1 o'clock A. M. the offer to sell was made by Coleman to Lawson; that Lawson had no inventory of the goods made, but acted on an inventory taken with reference to a sale to another, and that the trade was closed about 8 or 9 o'clock A. M. This was certainly a hasty consummation of a trade of such magnitude, and if the sale had been an ordinary one for money, it would be difficult to resist the conclusion that Coleman's intention was fraudulent, and that Lawson was chargeable with notice of such intention. A sale in payment of debts stands on principles entirely different. So long as the

[Pollak v. Searcy.]

law allows a failing debtor to prefer some of his creditors at the expense of others, it permits, if it does not invite, a race of diligence. The points of inquiry in such transaction are the *bona fides* and sufficiency of the consideration, and the question of benefit, open or secret, reserved or secured to the paying debtor. If the contract be unassailable at these points of attack, it is impregnable.—*Crawford v. Kirksey, supra; Carter v. Coleman,* 82 Ala. 177.

It is contended for appellant that Lawson, being an individual banker, had no valid claim against Coleman, of which he could claim payment. The particular ground urged is based on section 4435 of the Code of 1876, which prohibits an individual banker from discounting "any note, bill of exchange, or draft, at a higher rate of interest than eight per cent. per annum," and declares a violation of its provisions to be a misdemeanor. We need not determine whether this statute in its phraseology embraced the case we have in hand. As it was then framed, it was unconstitutional.—*Smith v. L. & N. R. R. Co.,* 75 Ala. 449; *S. & N. R. R. Co. v. Morris,* 65 Ala. 193. The statute has been since changed (Code of 1886, § 4140), with what effect we need not inquire.

The present case is not in any respect distinguishable from *Rankin v. Vandiver,* 78 Ala. 562, and the decree of the chancellor is free from error.

Affirmed.