# Chipman, Calley & Co. *v.* Stern & Co.

*Bill in Equity by Creditors to set aside Fraudulent Conveyance.*

1. *Conveyance by insolvent debtor to creditor; validity as against other creditors.*—An insolvent debtor may make an absolute sale of all his property, saving lawful exemptions, to one of his creditors, in payment of an existing *bona fide* debt, at a fair and reasonable price not materially less than the value of the property, not reserving or securing any benefit or trust to himself; and the purchasing creditor may lawfully stipulate, as a part of the consideration, or agreed price, to pay the debts due to certain other creditors.

2. *Same; valuation of property, and how determined.*—In determining the value of the property transferred, as bearing on the reasonableness of the agreed price, the weight to be given to the opinion of witnesses depends on their experience, and their knowledge of its condition; the controlling test generally is, not the depreciation in value, the business being continued, but what the property would bring in the market; and the undervaluation of some of the articles, as shown by subsequent sales, is immaterial, when it is counterbalanced by the overvaluation of other articles, making the aggregate price for all fair and reasonable.

3. *Same; case at bar.*—On consideration of the evidence in this case, which is stated in the opinion, the court holds, reversing the decree of the chancellor, that the price agreed to be paid for the goods, seventy-five per cent. of the invoice price, was fair and reasonable under the circumstances; that the writings, construed together, truly stated the real transaction between the parties, and that there was no fraudulent concealment of any fact, nor any secret trust or benefit reserved to the debtor.

[Chipman, Calley & Co. v. Stern & Co.]

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 30th December, 1887, by Henry Stern & Co. and J. Faust & Son, mercantile partnerships, suing as creditors of Andrew Curtis, a merchant doing business in Mobile under the name of A. Curtis & Co.; against said Curtis, and against Chipman, Calley & Co., a mercantile partnership doing business in Boston, Mass.; and sought to set aside, as fraudulent, a conveyance executed by said Curtis to Chipman, Calley & Co., of his entire stock of goods and all other property, excepting only goods valued at $1,000 which were claimed as exempt. The chancellor held the conveyance fraudulent and rendered a decree for the complainants; and his decree is here assigned as error. The opinion states the material facts.

W. D. WICKERSHAM, and R. P. DESHON, for appellants, submitted an elaborate printed argument, which was mostly devoted to a discussion of the evidence, and in which the following authorities were cited: *Sewall v. Henry*, 9 Ala. 24; *Bates & Hines v. Union Bank*, 2 Ala. 677; *Holman v. Crane*, 16 Ala. 577; *Robbins v. Webb*, 66 Ala. 396; 2 Parsons Contracts, 66; 4 Phil. Ev. 1421-24; *Prosser v. Henderson*, 11 Ala. 487; *Gordon v. Tweedy*, 71 Ala. 213; *Wood v. Craft*, 85 Ala. 262; *White v. Haas*, 32 Ala. 430; *Sharpe v. Orme*, 61 Ala. 253; *Webb v. Mullen*, 78 Ala 115; 1 Amer. & En. Encyc. Law, 513; *Crawford v. Kirksey*, 55 Ala. 300; *Carter Bros. v. Coleman*, 84 Ala. 258; *Adams v. Thornton & Wellborn*, 78 Ala. 491; *Hunt v. Rousmanier*, 1 Peters, 13; *Harrell v. Mitchell*, 61 Ala. 270.

PILLANS, TORREY & HANAW, *contra*, also submitted a printed argument, in which they discussed the evidence, and cited *Hill v. Nelms*, 86 Ala. 442; *Martin v. King*, 72 Ala. 354; 1 Greenl. Ev. § 564; *Levy v. Williams*, 79 Ala. 176; *Crawford v. Kirksey*, 55 Ala. 282; *Thames v. Rembert*, 63 Ala. 567; *Harrell v. Mitchell*, 61 Ala. 270; *Shealy v. Edwards*, 75 Ala. 411; *Pickett v. Pipkin*, 64 Ala. 520; *Zelnicker v. Brigham*, 74 Ala. 598; *Hubbard v. Allen*, 59 Ala. 283.

CLOPTON, J.—On November 30, 1887, Adam Curtis, a merchant engaged in the retail boot and shoe business in Mobile under the name of A. Curtis & Co., sold and trans-

ferred his entire property, not claimed as exempt, to Chipman, Calley and Co. Appellees, who were, prior to, and at the time of the sale, creditors of A. Curtis & Co., by the bill assail the transaction as fraudulent. The consideration paid was the payment and satisfaction of an indebtedness due by Curtis & Co. to Chipman, Calley & Co., and their promise and agreement to pay debts due by him to other named persons, amounting in the aggregate to $6,445.43. The transaction was evidenced by three different written instruments —a bill of sale to the stock of goods, book accounts, and store fixtures and equipments; an assignment of the leasehold interest in the store-house then occupied by Curtis, and an agreement for the satisfaction and payment of the specified debts.

Complainants do not controvert the rule, well settled by repeated decisions of this court, that an insolvent debtor may prefer one or more of his creditors, to the exclusion of the others, and that an absolute sale of the whole of his property, in payment of an antecedent *bona fide* debt, at a reasonably fair price, not reserving or securing to himself any benefit, or trust by which he may be benefitted, is valid, and will be sustained, whatever may have been his intentions, and whatever notice the preferred creditor may have of such intentions. Neither is the transaction rendered fraudulent by reason of an express stipulation, that the purchasing creditor will pay debts due to other specified creditors, and such debts are in fact paid.—*Hodges v. Coleman*, 76 Ala. 203; *Levy v. Williams*, 79 Ala. 171; *Rankin & Co. v. Vandiver*, 78 Ala. 562.

In the original bill, the main attack was made on the alleged grounds, that the value of the stock of goods, accounts and fixtures was greatly in excess of the amount of the indebtedness to Chipman, Calley & Co., and of the debts assumed to be paid, and that a secret understanding existed, whereby a benefit was reserved to Curtis. The amendment to the bill specifically charges, that the transfer of the leasehold interest was upon a secret consideration to be paid to Curtis, or was without consideration, and operated to secure a benefit to him, and to put the leasehold beyond the reach of his creditors. The amount and *bona fides* of the debts, the payment of which constituted the consideration price of the property, are not controverted.

The amended bill alleges that, at the time of, and contemporaneously with the making of the bill of sale, Curtis, in

addition to the goods and other property mentioned therein, sold or transferred to Chipman, Calley & Co. the leasehold interest in the store-house; and the evidence shows that all the written instruments were executed on the same day, and constituted one and the same transaction, and that the property mentioned in the bill of sale, and the leasehold, were included in the sale. In the trade, the stock of goods was estimated at seventy-five cents on the dollar of the invoice, or cost price, the book-accounts at $250, and the store-fixtures and equipments at $388.08, making an aggregate of $5,997.43.

Having carefully considered the evidence relating to the value of the property, we are forced to differ with the chancellor as to his conclusion in this regard. The weight to be given to the opinions of witnesses, of the value of property, depends on their experience in dealing in such property, and their knowledge of its condition. All the witnesses, with one exception, examined on part of complainants as to value, and several examined by defendants, were unacquainted with the stock of goods, or its condition. It therefore becomes material to ascertain, as nearly as practicable, the real condition of the stock at the time of the sale. The evidence shows that a part of the stock on hand consisted of goods recovered by Curtis, after being burned out in 1886; that the goods which he purchased prior to March, 1887, had been on hand from eight to fourteen months, sales having been made therefrom, which were not replenished, and a portion shop-worn; and the amount of the goods purchased from the first of August to the time of the sale, was about two thousand dollars. From the fact that the part of the stock taken by Curtis as exempt was valued by him at five per cent. less than the original cost, it is evident that they were selected from the new goods. From the testimony of the witnesses who knew the stock, and of those who examined the portion shipped to Boston, it sufficiently appears that the stock of boots and shoes at the time of the sale consisted of several hundred dollars worth—about nine hundred—which were greatly damaged by fire and water, some worthless; one-half or more of the balance was broken stock, which had not been replenished, and some shop-worn; the remainder being new goods in the original condition, from which some sales had been made. The hypothesis of the witnesses who testified that the depreciation in value at the expiration of fourteen months business would not exceed ten

[Chipman, Calley & Co. v. Stern & Co.]

or fifteen per cent., was, that the stock of boots and shoes had been bought and kept in store in the usual course of trade, with the usual replenishing of the same in consequence of sales; and the hypothesis on which defendant's witnesses based their opinion of the value was the condition of the stock substantially as we find it to have been. Generally, the controlling determination of the value of property is, what it would sell for in the market; not the depreciation in value, the business being continued. When the witnesses on both sides were asked, for what sum the stock would have sold, if sold in bulk for cash, they generally agree that it would not have brought more than seventy-five cents on the dollar of the original cost.

Also, there were other articles of property included in the sale, the book-accounts, store-fixtures, and leasehold. The sale was an entirety, each kind of property being an integral part. In such case, it should not be declared fraudulent, because the parties may have placed on one kind of property a valuation materially less than its real value, if the valuation placed on the other kinds of property exceed their real value to such extent that the market value of the entire property does not exceed the consideration paid. The inquiry is, was all the property sold at a reasonably fair price, taken as a whole? It is evident that the store-fixtures and equipments were estimated greatly in excess of their value, at least $300. Calley testifies, that he estimated, if the loss on the lease did not exceed three hundred dollars, his firm would come out fairly well, but that he regarded the value of the leasehold as merely nominal, because the chance of re-letting the store for the balance of the year was so unfavorable. This accords with the testimony of the real-estate dealers, who testified that, the time for renting having passed, the leasehold possessed no fixed value, from the fact that whether or not the store could have been rented depended upon contingencies which might or might not arise. On account of the happening of unforeseen contingencies—a fire, and the change of location of a merchant—they did realize $377.50 in addition to two months occupancy. If the amount thus realized, and its rental value for the time occupied, be estimated as the value of the leasehold, the aggregate value of the whole property sold does not exceed the consideration paid. This conclusion is sustained by the amount of the proceeds realized from the subsequent sales of the property, including the portion of the stock sold by the sheriff.

[Chipman, Calley & Co. v. Stern & Co.]

The inference of reservation of a secret benefit to the debtor, is founded mainly on the facts, that the leasehold is not mentioned in the bill of sale, or in the agreement as recorded, and on its alleged suppression, both in the pleadings and testimony, until the bill was amended. It is insisted that this was done for the purpose of deceiving the other creditors of Curtis, and that the debts agreed to be paid were used to cover and hide out the leasehold interest. Allusion may here be made to the controversy, which arose during the progress of the cause, respecting the time when an alteration apparent on the face of the agreement was made, by the erasure of the word *in*, substituting *and*, so that it reads: "the fixtures and equipments of every kind belonging to him, *and* said store," instead of "*in* said store," as it was originally written and recorded. If admitted that the alteration was made after the agreement was signed and recorded, the rights of Chipman, Calley & Co. do not necessarily depend upon the ascertainment of the time of the alteration; it could affect the validity of the agreement only as between the parties to it, and, as Chipman, Calley & Co. did not know, and had nothing to do with it, it can not operate to taint with fraud a previous transaction free therefrom when made. It may, however, be regarded a circumstance bearing on the *bona fides* of the transaction, to be considered in connection with other circumstances proved. Did the record sustain the contention of counsel, that up to the time of the amendment of the original bill, nothing in the testimony or papers filed in the cause indicated that the transfer of the leasehold interest was included in the agreement to sell, or that such transfer was contemplated, and that Calley and Curtis are silent in their depositions first taken on the subject of the leasehold, or any transaction in reference to the lease; this would authorize the inference of intentional concealment.

But this contention is founded in a misapprehension of the pleadings and the testimony, unless it is intended to be confined to the *written* agreement. On examination of the original bill, we find that it alleges, that Johnson claimed to be in possession of the stock of goods, and the store, as the agent of Chipman, Calley & Co., and was carrying on the business; and the agreement, attached to the answer of Curtis, shows that the notes given by him for the rent of the store, amounting to $750, constituted a part of the debts agreed to be paid by them. Possession and continued

occupation, in connection with an agreement to pay the rent for the entire year, only one month of which had then expired, would seem to indicate the acquisition of the lease. The bill was amended on April 28, 1888. On the day preceding, the deposition of Calley, first taken, was published. In this deposition, he states, that his firm occupied the store after the purchase until they discontinued business, about two months, and made every possible effort to re-let it, which they eventually succeeded in doing. Also, in answer to an interrogatory propounded on his cross-examination, he states, that they took a lease of the store, November 30, 1887, from Curtis. In Curtis' first deposition, taken on oral examination, March 13, 1888, after giving a general statement of the transaction, and after saying that Chipman, Calley & Co. assumed the payment of the rent, he states that he transferred the lease to them. From the examination of these witnesses it appears, that the parties considered the lease of the store to be an issue; at least, the witnesses were not silent in reference to it. We shall not decide at what time the alteration of the agreement was made; but simply remark that it does not appear to have been made for any purpose other than to make the agreement conform to the real transaction. The recitals of the bill of sale and agreement, as we construe them, are not untrue; they speak the truth so far as they go, but not the whole truth; for the evidence leaves no room for doubt, that the leasehold was included in the sale, and the amended bill so avers. The arrangement by which the lease was assigned by indorsement thereon, a bill of sale to the store and fixtures executed, and an agreement between the parties specifying the debts which Chipman, Calley & Co. were to pay, seems simple and natural.

In *Carter v. Coleman*, 84 Ala. 256, it is said: "So long as the law allows a failing debtor to prefer some of his creditors at the expense of others, it permits, if it does not invite, a race of diligence. The points of inquiry in such transaction are, the *bona fides* and sufficiency of the consideration, and the question of benefit, open or secret, reserved or secured to the paying debtor. If the contract be unassailable at these points of attack, it is impregnable." We have shown that the value of the whole property, whether determined by the evidence, or the actual proceeds realized subsequently, did not exceed the consideration paid. Chipman, Calley & Co. have either paid the debts agreed to be

paid by them, or have given their obligations to pay them, and Curtis has been discharged; and unless we totally disregard the testimony of the witnesses, no benefit was reserved to the debtor. The transaction is unassailable at the points of attack suggested in *Carter v. Coleman, supra.*

Reversed and remanded.