[Montgomery, Dryer & Co. v. Bayliss.]

# Montgomery, Dryer & Co. *v.* Bayliss.

*Trespass Against Attaching Creditor, by Purchaser from Defendant in Attachment.*

1, *Sale by insolvent debtor to creditor ; validity as against other creditors* —M. was indebted for borrowed money to her brother-in-law, J., who was a clerk in a store owned by her. J., with knowledge of M's insolvency, and that some of her creditors had notified her that they would not credit her further, offered to purchase the stock of goods in the store in which he was a clerk, but, on M. refusing to sell him this stock unless he would also purchase another stock of goods owned by her, purchased both the stocks, which together amounted to more than the debt due to him, and in payment therefor gave up M's note for the borrowed money and executed his own notes for the difference. *Held*, that the sale was fraudulent as to M's other creditors.

APPEAL from the City Court of Birmingham.

Tried before the HON. W. W. WILKERSON.

This was an action of trespass brought by J. B. Bayliss against Montgomery, Dryer & Company, a corporation, and its sureties on a bond of indemnity given to the Sheriff to secure the levy of a writ of attachment, issued in a suit by said corporation against M. C. Bayliss, upon certain goods and merchandise which said J. B. Bayliss claimed to own. Upon said writ of attachment there was an indorsement to the effect that the defendant therein, said M. C. Bayliss, as against the debt therein sued on, had waived her right to claim personal property as exempt under the Constitution and laws of Alabama.

On the evidence adduced, the defendants requested the following charges in writing, among others, and separately, excepted to the refusal of each of them : "15. The law presumes that people intend the natural consequences of their acts, and when M. C. Bayliss sold all, or substantially all, her property to plaintiff, partly in payment of a debt she owed plaintiff, and for the balance took plaintiff's notes, payable in the future, the natural consequence of such sale was to hinder or delay her other creditors, and is a badge of fraud which may be looked to by the jury, with all the other evidence in the case, in determining whether said sale was made with a fraudulent intent on the part of M. C. Bay-

liss, participated in by plaintiff." "18. I charge the jury that, if they believe the evidence, J. B. Bayliss, at the time he purchased the goods in controversy, had notice of facts sufficient to put a reasonably prudent man upon inquiry as to the intent of M. C. Bayliss in selling the goods in controversy." "22. If the jury believe from the evidence that J. B. Bayliss, at the time he purchased the goods in controversy from M. C. Bayliss, knew that M. C. Bayliss owed other debts unprovided for, or had information which, if followed up, would have led to the discovery of other debts, then the execution of his notes to M. C. Bayliss in part payment for the goods in controversy was the reservation of a benefit to M. C. Bayliss, and renders the sale fraudulent and void as against creditors, and you must find for the defendants." "25. I charge the jury that the evidence in the case shows that M. C. Bayliss was insolvent at the time of the sale to J. B. Bayliss, and if the jury believe from the evidence that J. B. Bayliss knew of her insolvency, or knew of facts sufficient to have put a man of ordinary prudence upon inquiry which, if followed up, would have disclosed the fact of her insolvency, they must find for the defendant."

Judgment was rendered for the plaintiff, and the defendants appeal.

GILLESPY & SMYER, for appellants.

McCURLEY & HALL, contra.

STONE, C. J.—In Levy & Co. v. Williams, 79 Ala. 171, the transaction which was assailed as fraudulent arose as follows : Williams owed Newhouse Brothers $282, and in payment sold them three tracts of land, which, in the trade, were valued at $1,000. One of the tracts was valued at $300. The creditor was urging payment of his demand; failing, asked for security, and finally proposed to take property in payment. Williams proposed to sell the three tracts, but refused to trade unless Newhouse Brothers would purchase the three tracts. The trade and settlement were finally concluded, Williams conveying the three tracts of land, while Newhouse Brothers cancelled their own claim, and cancelled or assumed two other small debts of Williams. The difference—between five and six hundred dollars—they paid him in money. Other creditors of Williams attacked the conveyance as fraudulent. This court, among other things, said : "There were three separate tracts of

land, one of which was valued at three hundred dollars. The purchase of this tract alone, or of either one of the tracts, would not have excited any suspicion of fraud. Newhouse Brothers did not wish to purchase all of the lands, but Williams required a purchase of all or none. It is no excuse for the preferred creditor, in such case, that his purpose was to secure the payment of an honest debt, and that he made the only and best arrangement which the debtor was willing to make. The demand of their debtor that they should purchase all three tracts, when one of them was sufficient to pay their debt and the other two preferred creditors named, ought to have satisfied them that the sole purpose of the debtor was not the payment of an honest debt, but that his ultimate purpose in converting real estate into money was, in the terse language of Chief-Justice Black, 'because money is more easily shuffled out of sight than land,' and that he was employing the payment of a debt as the means of accomplishing this purpose. While Newhouse Brothers did not know that Williams was insolvent, they believed that he was unable to pay all of his indebtedness. Slight inquiry would have led to the discovery that he was insolvent; that his other real estate was under mortgage; that his stock of merchandise was of inferior quality, and small in amount; that with such stock the cash he received could not enable him to carry on his business under the burden of indebtedness that was pressing on him, and that this pretense for wanting cash was untrue. Being charged as having knowledge of these facts, which reasonable inquiry would have disclosed, it was their duty to pause and inquire before completing the purchase. Having constructive notice of his fraudulent purpose, they must suffer the condemnation of the law by reason of the fraud which they enabled their debtor to perpetrate. An insolvent debtor is not denied the right to sell his property; but the purpose of the sale must be to appropriate the proceeds, to the full extent, to the payment of his debts." To the same effect, see *Leinkauff v. Frenkle*, 80 Ala. 136.

In *Carter v. Coleman*, 82 Ala. 177, this court said: "A vendee who purchases property from an insolvent or failing debtor, and pays him money, with a knowledge of the fraudulent intent of the seller, or of facts and circumstances of a suspicious nature having reference to the transaction, sufficient to induce inquiry, which, if pursued, would lead to the discovery of such fraudulent intent, renders aid in consummating the purpose of the debtor, sufficient to invalidate his purchase."—*Owens v. Hobbie, Ib.* 466 ; *McDowell v.*

[Montgomery, Dryer & Co. v. Bayliss.]

*Steele*, 87 Ala. 493; *Lehman v. Kelly*, 68 Ala. 192; *Crawford v. Kirksey*, 55 Ala. 282; *Borland v. Mayo*, 8 Ala. 104.

J. B. Bayliss, plaintiff in the present suit, and J. K. Bayliss are brothers. M. C. Bayliss is the wife of J. K. Bayliss. M. C. Bayliss, the wife, owned and was operating two stores, for the sale of merchandise; one at Avondale, and the other at Bessemer. J. B. Bayliss was, and for eight months had been, clerk or salesman in the Avondale store. He testified that the proprietress, M. C. Bayliss, owed him $750 for borrowed money, and that he was urging its payment. J. K. Bayliss informed him they could not pay him, unless he would purchase the goods in the two stores. He did not wish to buy the Bessemer store, but offered to purchase the Avondale goods. This was refused unless he would purchase both stores. This he did, giving up Mrs. Bayliss' note for the borrowed money, and giving his own notes for $750 additional. Before this sale was consummated, J. B. Bayliss, the purchaser, knew M. C. Bayliss owed Montgomery, Dryer & Co. for goods she had purchased to keep up the stocks of merchandise, and that they had given her notice that they would not make further sales to her, unless she made some payment. He testified he had this knowledge. She owed them about $1,000. There was proof that she then owed five or six thousand dollars, and that J. B. Bayliss admitted that she owed $2,500 in addition to the debt she owed him. Besides the merchandise in the stores, valued and purchased at $1,500, she owned no other property except real estate valued at $400, and encumbered to the extent of one or two hundred dollars. No inventory was taken in the sale of the two stocks of merchandise, but only a mental estimate made; so J. B. Bayliss testified.

We feel justified in holding that, when Mrs. Bayliss sold out to J. B. Bayliss, she was insolvent, and that he had sufficient information of her condition to charge him with knowledge of it. The law permitted him to secure himself for all she owed him, even though she thereby disabled herself to pay others. But he had no authority to go beyond the collection of his just demand, under the circumstances shown in this record.

Of the charges asked by defendants, those numbered 15, 18, 22 and 25, ought each to have been given.

Reversed and remanded.